Kevin T. Snider, State Bar No. 170988
    *Counsel of Record*
Matthew B. McReynolds, State Bar No. 234797
PACIFIC JUSTICE INSTITUTE
Post Office Box 276600
Sacramento, CA 95827
Tel.  (916) 857-6900
Fax: (916) 857-6902
Email: kevinsnider@pacificjustice.org
        mattmcreynolds@pacificjustice.org

*Attorneys for Intervenors/Defendants*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC.; PAUL STOREY; BILLY FERGUSON; KAREN BUCHANAN; JOSEPH MORROW; ANTHONY G. ARLEN; ELISABETH STEADMAN; CHARLES AND COLLETTE CRANNELL; MIKE OSBORNE; KRISTI CRAVEN; WILLIAM M. SHOCKLEY; PAUL ELLCESSOR; JOSEPH RITTELL; WENDY CORBY; PAT KELLEY; CAREY GOLDSTEIN; DEBORA SMITH; KATHY FIELDS; RICHARD MOORE; SUSAN ROBINSON; AND KEN NAHIGIAN,<br><br>**Plaintiffs,**<br><br>v.<br><br>**TIMOTHY GEITHNER, in his official capacity as Secretary of the United States Department of the Treasury; DOUGLAS SHULMAN, in his official capacity as Commissioner of the Internal Revenue Service; and SELVI STANISLAUS, in her official capacity as Executive Officer of the** | Case No. 2:09-CV-02894-WBS-DAD<br><br>**REPLY IN SUPPORT OF MOTION TO INTERVENE BY PASTOR MICHAEL RODGERS, ET AL.**<br><br>HEARING: Nov. 23, 2009<br>TIME: 2:00 p.m.<br>COURTROOM: 5<br>TRIAL DATE: TBD |

Reply in Support of Motion to Intervene by Pastor Michael Rodgers, et al.

-1-

| | |
|---|---|
| **California Franchise Tax Board,** | ) |
|    **Defendants,** | ) |
|    **AND** | ) |
| **PASTOR MICHAEL RODGERS; DOES 1-100, Proposed Intervenors-Defendants.** | ) |

## INTRODUCTION

To their credit, the United States defendants (sometimes hereinafter, "U.S.") have sharpened the issues at hand by conceding that the Motion to Intervene by Proposed Defendants-Intervenors ("Pastor Rodgers" and "the ministers") is timely, and that they have significantly protectable interests in the litigation. U.S. Response to Mot. to Intervene (U.S. Resp.) at 3.

The U.S. raises four primary arguments in opposition to the Motion to Intervene. First, the U.S. contends that the ministers can adequately protect their significant interests by "other means," such as amicus status. Second, the U.S. argues that it adequately represents the interests of the ministers who stands to lose the most by a negative decision. Third, the U.S. argues that permissive intervention requires independent grounds of jurisdiction not present here. Fourth, and finally, the U.S. argues that permitting intervention here will open the proverbial floodgates to countless other would-be intervenors. Each argument is deficient for the reasons explained below.

## SUMMARY OF THE ARGUMENT

In short, the contentions of the United States fail to overcome Rule 24's predisposition toward intervenors. First, amicus status is woefully inadequate to protect the ministers' significant interests, as it prevents them from being meaningfully involved at crucial junctures in the litigation, such as the filing of a motion to dismiss, or filing an appeal, and leaves little basis for the ministers to file their own lawsuit. Second, the U.S. cannot adequately represent the interests

Reply in Support of Motion to Intervene by Pastor Michael Rodgers, et al.

-2-

of the ministers because it has an inherent conflict of interest—unlike the ministers, the United States has everything to gain and nothing to lose from an adverse ruling. Third, the U.S. misconstrues the nature of permissive intervention, resulting in an illogically higher standard than exists for intervention as of right. Fourth, and finally, there is no basis for assuming that allowing the Proposed Defendants-Intervenors to intervene will require the same result for any other ministers who wish to intervene. If anything, each subsequent minister or group of ministers who might seek to intervene through other counsel would have a more difficult task of showing inadequate representation, if the instant Motion is granted. Conversely, denial of the Motion will leave tens of thousands of ministers in California with no meaningful voice in a case directly affecting their financial interests.

## ARGUMENT

### I. Amicus status will not sufficiently protect the ministers' significant interests and is not an alternate forum.

The U.S. concedes that the ministers have "significantly protectable interests" but argues that "other means" such as amicus status are good enough for them. Not so. The U.S. cites *California ex rel. Lockyer v. U.S.*, 450 F.3d 436 (9th Cir. 2006) as their authority for the proposition that even though the ministers might be affected by the present action, the ministers' interests are not impaired because they have "other means" to protect their interest, namely they can file an amicus brief. *Id*. at 442; U.S. Resp. 4: 24-26. However, in *Lockyer* the court noted that if intervention was not allowed, the intervenors would "have no alternative forum where they can mount a robust defense of the Weldon Amendment." *Id*. (emphasis added). *See also*, *U.S. v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004) (proposed intervenors had separate process in district court to protect their interest); *U.S. v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) (proposed intervenors could bring their own lawsuits against the parties). Amicus status is not an "other means" by

Reply in Support of Motion to Intervene by Pastor Michael Rodgers, et al.

-3-

which the ministers can protect their interests in that it is not an alternate forum.  Under the U.S.' own reasoning, the ministers lack an alternate forum because they would be unable to bring their own lawsuit declaring the statutes in question constitutional.  U.S. Resp. 7:9-25.  The ministers should be allowed to intervene because, according to the U.S., they lacks a separate forum in which to mount a robust defense of the challenged statutes.[1]

The Ninth Circuit's favorability toward intervention in cases like this makes sense.  As amicus, the ministers could not realistically expect their arguments to be taken as seriously as party positions—even though Pastor Rodgers and the ministers have much more to lose from an adverse decision than do the government defendants.  By contrast, the construction offered by the U.S. would render Rule 24 meaningless.  If it is determined that the ministers can simply become amicus, it is difficult to imagine any situation in which Rule 24 could not be similarly skirted.

## II.     The United States has an inherent conflict of interest with the ministers and cannot adequately represent their interests.

The Secretary of the Treasury, Commissioner of the IRS, and Executive Officer of the California Franchise Tax Board face an inherent conflict of interest with the ministers.  If the statutes at issue are ultimately struck down, the Defendants would reap a staggering windfall of new tax revenues.  In other words, the Defendants have everything to gain by losing in court.  By contrast, the ministers—for whose benefit the statutes were created—have everything to lose from this litigation.  To say that Defendants cannot adequately represent the interests of the Proposed Defendants-Intervenors is an understatement, reminiscent of the proverbial fox guarding the hen-house.

---

[1] The ministers do not concede that they lack an independent jurisdictional basis on which they could file a separate action to prevent the deprivation of their interests.  However, judicial

Reply in Support of Motion to Intervene by Pastor Michael Rodgers, et al.

-4-

The U.S. claim of adequate representation also ignores the fact that the ministers have significant interests in both the federal *and state* statutes being challenged. Decl. of Michael Rodgers In Support Of His Motion To Intervene (Rodgers Decl.) ¶¶ 6, 8. The U.S. rightly makes no claims that it can defend the state statutes, resulting in at best a half-representation of the ministers' interests. The state defendant has made no appearance in this case, so there can be no presumption that the ministers' interests in the state statutes will be adequately represented at all. Even were the state defendants to adopt similar reasoning as the federal defendants, the claimed representation of the ministers' interests by two different sets of attorneys is untenable.

For these reasons, it cannot be shown—much less assumed—that the U.S. "will undoubtedly make all of the intervenor's arguments, [or] whether [a present party] is capable of and willing to make such arguments." *Prete*, 438 F.3d at 956 (citing *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)).

The advisory committee notes for Rule 24 state "if an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001). Pastor Rodgers has claimed the tax exemptions since 1995, receiving a meager $46,000 salary a year including the housing allowance. Rodgers Decl. ¶¶ 7, 9. The tax exemptions are extremely important to tens of thousands of ministers in California, including Pastor Rodgers, and removal of the tax exemptions "would have a direct, immediate, negative financial impact" on him and his family. *Id.* at ¶¶ 13-14. The ministers should be allowed to

---

economy certainly weighs in favor of considering all such interests in the litigation already commenced by FFRF.

Reply in Support of Motion to Intervene by Pastor Michael Rodgers, et al.

-5-

intervene because they would be substantially affected in a practical sense by the outcome of this litigation.

The assumption of the U.S. that it will make all of the ministers' arguments is highly speculative and conjectural. In *Lockyer*, the court found that the United States and the proposed intervenors had "distinctly different, and likely conflicting, interests" because the government suggested a limiting construction in their motion for summary judgment while the proposed intervenors argued that the challenged statute was to be read broadly. *Id*. 450 F.3d at 444.

In anticipation of intervention being granted, the ministers are preparing a Motion to Dismiss on both jurisdictional and substantive bases. At this point there is no indication the federal Defendants will even file a Motion to Dismiss, much less that they will make the same arguments as the ministers. Relegation to amicus status would deny the ministers any opportunity to seek the dismissal of this case at the outset, or the ability to file other crucial motions in protection of their significant interests. Just as importantly, in the event of an adverse decision that could effectively take away the housing allowance tax exemption, the ministers would have no opportunity to participate in a decision whether to appeal. *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398 (9th Cir. 1995); *Didrickson v. U.S. Dep't of Interior*, 982 F.2d 1332, 1338 (9th Cir. 1992); *Yniquez v. Arizona*, 939 F.2d 727, 732-34 (9th Cir. 1991) (intervenors were allowed to appeal when original parties decided not to appeal); *Calif. Dept. of Social Svcs. v. Thompson*, 321 F.3d 835 (9th Cir. 2003) (allowing intervenor to appeal decision even though state chose not to do so). In a situation where the ministers have everything to lose and the U.S. has everything to gain and nothing to lose, the ministers should not be marginalized with assumptions and conjecture that all their arguments will be made in court.

Reply in Support of Motion to Intervene by Pastor Michael Rodgers, et al.

-6-

**III.    The U.S. misconstrues the nature of permissive intervention.**

To hear the United States tell it, permissive intervention under Rule 24(b) is more stringent than intervention under Rule 24(a). Not surprisingly, this is not the law. The U.S. points to *So. Cal. Edison v. Lynch*, 307 F.3d 794 (9th Cir. 2002) for the proposition that an intervenor "must, at a minimum, show '(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Id*. at 803; Plts. Compl. 6:22-25. However, concerning the element of jurisdiction the Ninth Circuit has "resolved intervention question without making reference to standing doctrine." *Portland Audubon Soc. v. Hodel*, 866 F.2d 302, 308 n. 1 (9th Cir. 1989). The Ninth Circuit went even further in another case, stating that "the standing requirement [of Rule 24] is at least implicitly addressed by our requirement that the applicant must "assert [ ] an interest relating to the property or transaction which is the subject of the action." *Portland*, 866 F.2d at 308 n. 1 (quoting *Orange County v. Air California*, 799 F.2d 535, 537 (1986)).

The U.S. states that because the ministers cannot show an independent ground for jurisdiction, "[o]n that basis alone, the Court should deny his request [for permissive intervention]." U.S. Resp. 7:2-3. While the ministers do not concede that there are no independent grounds for jurisdiction (see ante, footnote 1), permissive intervention has not been interpreted as strictly as the U.S. would have it. Rather, factors are employed on a case-by-case basis to determine whether to grant or deny intervention. *U.S. v. City of Los Angeles, Cal.*, 288 F.3d at 403. Of course, since the ministers are moving to intervene as Defendants in this case, they are consenting to the court's jurisdiction, rendering extensive discussion of this point unnecessary.

The ministers should be granted permissive intervention because the intervenor's defense and the main action does have a question of law or fact in common. The U.S. proposes that because

---

Reply in Support of Motion to Intervene by Pastor Michael Rodgers, et al.

this is a case where the "underlying action is the constitutionality of a statute on its face…[the ministers] have no unique jurisdictional connection or question of law held in his own right." However, under such reasoning the Court would have never granted intervention in *Lockyer*, where the case revolved around the constitutionality of the Weldon Amendment. *Id*. 450 F.3d at 439. Intervenors in *Lockyer* were allowed to intervene because they had "'more narrow, parochial interests' than the United States" in defending the constitutionality of the Weldon Amendment. *Id*. Here, the ministers' interests are at the least, broader than the U.S.' interests, because the ministers' interests encompass both federal and state statutes for tax exemptions granted to them.

The U.S. asks this Court to deny permissive intervention under the proposition that "[the ministers] only shares a common question of law insofar as an identical question of law is 'common' and not merely redundant." U.S. Resp. 7:26-27. Such a proposition turns Rule 24(b) on its head. The ministers' constitutional defense of the statutes does indeed share a common question of law with the main action and therefore meets the third factor of 24(b). In addition, the U.S. assumes the ministers "merely seek[] to deny" the allegation the statutes are unconstitutional on its face without knowing the arguments and defenses the ministers will bring in the litigation. U.S. Resp. 7:27-8:1. Once again, the ministers would have to assume that the U.S. would raise all defenses which they would raise.

**IV. Allowing the ministers to intervene will not "open the floodgates" or unduly hinder justice.**

Granting intervention would not unduly delay or unnecessarily encumber the litigation at hand because any other subsequent ministers seeking to intervene would have a much higher standard of showing adequate representation. The U.S. argues that "allowing intervention would provide a rationale for any other 'minister of the gospel'…to intervene, thus undermining judicial economy and creating potential for undue delay or prejudice." U.S. Resp. 8:20-22. Such reasoning is faulty

Reply in Support of Motion to Intervene by Pastor Michael Rodgers, et al.

because any subsequent ministers seeking to intervene would have the burden of proving anew all four elements of Rule 24(a), including inadequately representation by Pastor Rodgers and the Doe ministers now before the Court.

Justice is not unduly hindered by the ministers' intervention because ministers have the strongest interest in the outcome of this litigation. In *U.S. v. City of Los Angeles, Cal.* the defendants argued that allowing intervention would slow the legal process and delay justice. *Id*. 288 F.3d at 404. The Ninth Circuit rejected that argument, stating that "the idea of 'streamlining' the litigation…should not be accomplished at the risk of marginalizing those [intervenors] who have some of the strongest interest in the outcome." *Id*. Ministers have the strongest interest in the outcome of this litigation because they have the most to lose in an unfavorable outcome, in contrast with the U.S. who has nothing to lose in a favorable ruling and everything to gain in an unfavorable one.

CONCLUSION

For the foregoing reasons, the ministers' Motion to Intervene should be granted. Respectfully submitted, November 16, 2009.

PACIFIC JUSTICE INSTITUTE

By: /s/ Matthew B. McReynolds
Kevin T. Snider
Matthew B. McReynolds

*Attorneys for Pastor Michael Rodgers and Does 1-100, Proposed Defendants-Intervenors*

---

Reply in Support of Motion to Intervene by Pastor Michael Rodgers, et al.

# PROOF OF SERVICE

The undersigned, being over the age of eighteen years and competent to testify, whose business address is P.O. Box 276600 (mail) and 9851 Horn Rd. Suite 115 (deliveries), Sacramento, CA 95827, declares as follows:

On September 16, 2009, I served the foregoing document:

- REPLY IN SUPPORT OF MOTION TO INTERVENE BY PASTOR MICHAEL RODGERS, ET AL.

on all parties, by the following methods:

- Plaintiffs Freedom from Religion Foundation, et al.:  by filing the document with the Court's CM/ECF system, through which their attorney Michael Newdow is registered to receive service.

- Defendants Timothy Geithner, Secretary of the United States Treasury, and Douglas Shulman, Commissioner of the IRS:   by filing the document with the Court's CM/ECF system, through which their attorney Jeremy Hendon is registered.

- Defendant Selvi Stanislaus, Executive Officer of the California Franchise Tax Board: by mailinghte document via first-class U.S. mail, postage prepaid, to P.O. Box 1468, Sacramento, CA 95812-1468.

I declare under the penalty of perjury though the laws of the United States and the State of California that the foregoing is true and correct and is of my own personal knowledge.  Executed this 16th day of November, 2009, in Sacramento County, California.

    /s/  Matthew McReynolds
Matthew McReynolds, Declarant *

*Original signature maintained by attorney*

Reply in Support of Motion to Intervene by Pastor Michael Rodgers, et al.