UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC.; PAUL STOREY; BILLY FERGUSON; KAREN BUCHANAN; JOSEPH MORROW; ANTHONY G. ARLEN; ELISABETH STEADMAN; CHARLES AND COLLETTE CRANNELL; MIKE OSBORNE; KRISTI CRAVEN; WILLIAM M. SHOCKLEY; PAUL ELLCESSOR; JOSEPH RITTELL; WENDY CORBY; PAT KELLEY; CAREY GOLDSTEIN; DEBORAH SMITH; KATHY FIELDS; RICHARD MOORE; SUSAN ROBINSON; AND KEN NAHIGIAN,<br><br>       Plaintiffs,<br><br>   v.<br><br>TIMOTHY GEITHNER, in his official capacity as Secretary of the United States Department of the Treasury; DOUGLAS SHULMAN, in his official capacity as Commissioner of the Internal Revenue Service; and SELVI STANISLAUS, in her official capacity as Executive Officer of the California Franchise Tax Board,<br><br>       Defendants, | NO. CIV. 09-2894 WBS DAD<br><br>MEMORANDUM AND ORDER RE: MOTION TO INTERVENE |

```
                    AND

PASTOR MICHAEL RODGERS AND
DOES 1-100, proposed
Intervenors-Defenants
_____/
```

----oo0oo----

On October 16, 2009, the Freedom From Religion Foundation, Inc. ("FFRF") and named plaintiffs filed a Complaint in this court seeking a declaration that 26 U.S.C. §§ 107 and 265(a)(6) violate the Establishment Clause of the United States Constitution and injunctive relief.  On October 22, 2009, Pastor Michael Rodgers moved to intervene as a defendant in this action.

I.   Factual and Procedural Background

On October 16, 2009, the Freedom From Religion Foundation, Inc. ("FFRF") and named plaintiffs filed a Complaint in this court seeking a declaration that 26 U.S.C. §§ 107 and 265(a)(6) violate the Establishment Clause of the United States Constitution and injunctive relief.  (Docket No. 1.)  Sections 107 and 265(a)(6) provide preferential tax benefits to "ministers of the gospel," and are administered by the Internal Revenue Service ("IRS") and the Department of the Treasury ("Treasury").

Section 107 of the Internal Revenue Code ("IRC") allows "ministers of the gospel" to exclude their rental allowance or rental value of any home furnished to them as part of their compensation from gross income for income tax purposes.  26 U.S.C. § 107.  The plaintiffs allege that the IRS requires that a minister of the gospel be "duly ordained, commissioned, or licensed" in order to be entitled to the tax benefit.  (Compl. ¶ 43.)  The plaintiffs further allege that the § 107 exclusion is

available only when the minister is given use of the house or receives a housing allowance as compensation for services performed "in the exercise of" his ministry. Id. ¶ 45. Treasury regulations allegedly clarify the requirements to receive religious tax benefits. Id. ¶¶ 43-44, 46-49.

Section 265(a)(6) of the Internal Revenue Code allows a minister of the gospel to claim deductions under §§ 163 and 164 of the Internal Revenue Code for residential mortgage interest and property taxes. 26 U.S.C. § 265(a)(6). Plaintiffs allege that ministers of the gospel receive the deduction even though the money used to pay those expenses was received as a tax-exempt § 107 allowance, and that non-clergy taxpayers cannot make similar deductions. (Compl. ¶ 50.)

The plaintiffs further allege that sections 17131.6 and 17280(d)(2) of the California Revenue and Taxation Code violate the Establishment Clause of the United States and California Constitutions. Id. ¶¶ 37-38. These provisions allegedly mirror §§ 170 and 265(a)(6) of the Internal Revenue Code. Id.

Plaintiffs allege that all of the above tax provisions violate the Establishment Clause of the United States Constitution, which provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend I. Plaintiffs further allege that the California Constitution contains a similarly worded Establishment Clause which is violated by the California Revenue and Taxation Code provisions. See Cal. Const. art. I § 4. Finally, plaintiffs allege that the above provisions of the California Revenue and Taxation Code violate Article 16, Section 5 of the California Constitution,

3

which prohibits aid in support of "any religious sect, church, creed, or sectarian purpose."  Cal. Const. art. XVI § 5.

On October 22, 2009, Pastor Michael Rodgers moved to intervene as a defendant in this action.  Pastor Rodgers is a minister of the gospel in the Sacramento area who currently uses the ministerial tax exemption housing allowance challenged by plaintiffs in this action.  Pastor Rodgers moves to intervene on behalf of himself and Does 1-100 ministers within the jurisdiction of the Eastern District of California.

II.  Discussion

Pastor Rodgers seeks to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2), or, alternatively, Rule 24(b)(1)(B).  Rule 24 provides:

> (a) Intervention of Right.
> On timely motion, the court must permit anyone to intervene who:
> . . .
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> (b) Permissive Intervention.
> **(1) In General.**
> On timely motion, the court may permit anyone to intervene who:
> . . .
> (B) has a claim or defense that shares with the main action a common question of law or fact.
>
> **(3) Delay or Prejudice.**
> In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

A.  Intervention of Right

Rule 24(a)(2) is subdivided into four elements:

(1) [T]he applicant's motion must be timely; (2) the

4

>applicant must have a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

California ex rel Lockyer v. United States, 450 F.3d 436, 440-41 (9th Cir. 2006) (citing Sierra Club v. EPA, 995 F.2d 1478 (9th Cir. 1993)). The party seeking intervention bears the burden of showing that all of these four elements are met, Prete v. Bradbury, 438 F.3d 949, 954 (9th Cir. 2006), but Rule 24(a) is "construed broadly in favor of applicants for intervention." Greene v. United States, 996 F.2d 973, 976 (9th Cir. 1993).

Because the government concedes that the proposed interveners meet the first and second elements of the test for intervention as of right, (Response Mot. Intervene ("Response") 3-4), the court addresses only the third and fourth elements of the test.

      1.    <u>Applicant's Ability To Protect His Interest May Be Impaired</u>

To satisfy the third element of the test, the potential intervenor must show that his ability to protect his interest may be impaired if he is not allowed to intervene in the action. Fed. R. Civ. P. 24(a)(2). As stated above, the government concedes that the pastor's[1] financial interest in continuing to receive the income tax exemption likely qualifies as a

---

[1] Potential intervenors include Pastor Rodgers and Does 1-100. Because no facts are alleged regarding the Does, the motion to intervene must be construed only as to Pastor Rodgers.

5

"significantly protectable interest" that meets the second element of the test for intervention of right. The government and potential intervenor also agree that "[a] ruling on the constitutionality of the statutes at issue is a disposition that might affect Applicant's interests." (Response 4.) However, a potential intervenor's interests "might not be 'impaired' if they have 'other means' to protect them." Lockyer, 450 F.3d at 442. The government asserts that the proposed intervenor can adequately protect his interest in receiving the tax exemptions by filing an amicus brief with the court, and that therefore he does not qualify for intervention as of right.

The government does not explain why filing an amicus brief should qualify as an "other means" by which potential intervenors can protect their interests, nor does it cite any cases in support of this interpretation. Indeed, cases finding that proposed intervenors had "other means" to protect their interests have done so when other avenues of legal process have been available. See, e.g., United States v. Alisal Water Corp., 370 F.3d 915 (9th Cir. 2004) (separate district court process for approving claims against debtor sufficient to protect proposed intervenor/creditor interest); United States v. City of Los Angeles, 288 F.3d 391 (9th Cir. 2002) (possibility of individual suits against police officers sufficient to protect interests of community groups seeking to protect members from unconstitutional police practices). The filing of an amicus brief to the court seems a meager substitute in comparison, and would deny the potential intervenors a voice in key junctures of this litigation.

1          Additionally, the government and potential intervenor
2   agree that it is likely that the intervenor lacks a separate
3   legal forum in which to litigate the constitutionality of the
4   income tax exemptions.  In its argument against permissive
5   intervention, the government asserts that the proposed intervenor
6   lacks independent grounds for jurisdiction and would be unable to
7   bring his own lawsuit declaring the statute in question
8   constitutional.  (Response 7 (citing 28 U.S.C. § 2201(a)
9   (empowering courts to "declare the rights and other legal
10  relations of any interested party seeking such a declaration" in
11  "a case of <u>actual controversy</u> within its jurisdiction, <u>except</u>
12  <u>with respect to Federal taxes</u> other than actions brought under
13  section 7428 of the Internal Revenue Code.") (emphasis in
14  Response)).)
15          The applicant cites <u>Lockyer</u>, which found that, if not
16  allowed to intervene, healthcare providers who did not provide
17  abortion had "no alternative forum" in which they could mount a
18  robust defense of a statute forbidding states from discriminating
19  against healthcare providers that did not provide abortions.  <u>Id.</u>
20  at 442.  Because the statute at issue was a spending measure, the
21  proposed intervenor in that case had no enforceable rights.  <u>Id.</u>
22  at 443.  As a result, they could not bring a separate suit to
23  argue for their interpretation of the statute.  If the statute in
24  that case was struck down or narrowed, the proposed intervenor
25  would have no alternative forum in which to contest that
26  decision.  <u>Id.</u>  The proposed intervenor here correctly notes that
27  a "case or controversy" for purposes of establishing jurisdiction
28  would not likely arise unless and until the plaintiffs in this

7

action succeed at striking down the income tax exemptions.

Therefore, the proposed intervenor has shown that his ability to protect his interest in the continued enforcement and constitutionality of the income tax exemptions may be impaired if he is not allowed to intervene in this action, and the third element is met.

### 2. Adequacy of Representation

The final element is that proposed intervenors' interests are not being adequately represented by the current parties. Fed. R. Civ. P. 24(a). If an absentee will be substantially affected in a practical sense by the determination made in an action, as a general rule that absentee should be entitled to intervene. Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 822 (9th Cir. 2001)(discussing advisory committee note to Rule 24). The burden on proposed intervenors in showing inadequate representation is typically minimal and is satisfied by a showing that representation of their interests may be inadequate. Arakaki, 324 F.3d at 1086.

#### a. The Same "Ultimate Objective" in the Suit

The most important consideration in determining the adequacy of representation is how the proposed intervenor's interests compare with the interests of the existing parties. Id. "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." Lockyer, 450 F.3d at 443 (quoting Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003)). When the parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention. Id.;

see also Perry v. Proposition 8 Official Proponents, --- F.3d ----, No. 09-16959, 2009 WL 3857201, at *1 (9th Cir. Nov. 19, 2009) (denying intervention of right because "differences [between proposed intervenors and existing parties] are rooted in style and degree, not the ultimate bottom line.  Divergence of tactics and litigation strategy is not tantamount to divergence over the ultimate objective of the suit.").  When this presumption of adequacy applies, the intervenor can rebut it "only with a 'compelling showing' to the contrary." Perry, No. 09-16959, 2009 WL 3857201, at *2 (quoting Arakaki, 324 F.3d at 1086).

"There is also an assumption of adequacy when the government is acting on behalf of a constituency that it represents." Lockyer, 450 F.3d at 443. (quoting Arakaki, 324 F.3d at 1086).  When the government is involved in a lawsuit, it acts on behalf of the constituency that it represents.  "In the absence of a very compelling showing to the contrary, it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." Id. (quoting Arakaki, 324 F.3d at 1086)(internal quotation marks and citation omitted, emphasis added).  A very compelling showing of the government's inadequacy exists where the intervenor demonstrates a likelihood that the government will abandon or concede a potentially meritorious reading of the statute. Lockyer, 450 F.3d at 444.

The proposed intervenor/defendant and the government here share the same interest and ultimate objective: upholding the constitutionality of the ministerial housing tax exemptions.  As a minister who receives the housing allowance tax exemption, the applicant seeks to intervene as of right in order to litigate

9

this action on the merits and defend against the plaintiffs' facial constitutional attack. His ultimate objective is for the statutes at issue to be upheld. Likewise, the government has asserted that it intends to file a motion to dismiss in this action and fully defend the challenged provisions of the Internal Revenue Code. Its ultimate objective is that the laws of the United States-including the provisions of the IRC at issue here-are enforced and upheld.

Arguments made by the applicant, addressed fully below, reflect mere potential differences in degree or litigation strategy, and fail to allege any deviation in the ultimate objective of the United States as asserted at oral argument. Therefore, the applicant must make a "very compelling showing" that the government will inadequately represent his interests in order to intervene as of right. See Perry, No. 09-16959, 2009 WL 3857201, at *3.

### b. Rebutting the Presumption of Adequate Representation

The applicant here generally makes vague and unsubstantiated claims that the defendants are "at bottom politically-motivated bodies" that will make litigation decisions, such as decisions to appeal adverse rulings, based on mere political expediency. (Mot. Intervene 10-11.) While it is true that the Solicitor General of the United States determines whether the United States will appeal adverse rulings made by lower courts, this fails to amount to a "very compelling showing" to overcome the presumption of adequate representation by the United States.

The applicant compares his situation to Lockyer, but the government in that case was advocating for a limiting construction of the federal statute that was much narrower than advocated-for by the proposed intervenors. Id. at 444; see also Tucson Women's Health Center v. Ariz. Med. Bd., No. 09-1909 (D. Ariz. Nov. 24, 2009) (finding that defendants may not share the same ultimate objective as proposed intervenors because defendants argued for a limiting interpretation of statute to preserve its constitionality).

The government in this case has yet to file a responsive pleading but has represented it intends to fully defend the statutes at issue. Indeed, in Warren v. Commissioner, 282 F.3d 1119 (9th Cir. 2002), the court of appeals sua sponte asked the parties to brief the question of whether the ministerial housing exemption of IRC § 107 violated the Establishment Clause. There, the government filed a brief defending its constitutionality, Warren v. Comm'r, No. 00-71217, Supp. Brief for Appellant (Docket No. 50) (9th Cir. May 3, 2002), which is evidence that the government will likewise defend the statute in this case.

The applicant argues that the mere fact that the IRS in Warren prosecuted Rev. Warren for what it believed to be excessive housing claims under the old IRC § 107 shows that the government has a different view of the scope of the exemption sufficient to warrant intervention as of right. In investigating Rev. Warren's housing exemption claims, however, the IRS was merely enforcing IRC § 107 against potential abuse. Furthermore, the IRS later entered into a stipulation of dismissal with Rev.

Warren, allowing him to claim the full amount of his housing allowance as exempt from federal income taxes. Warren, 302 F.3d 1012, 1014 n.2 (9th Cir. 2002) (denying Prof. Chemerinsky's motion to intervene).

Finally, the Clergy Housing Allowance Clarification Act of 2002, Pub. L. No. 107-181, 116 Stat. 583 (codified at 26 U.S.C. § 107), adopted the interpretation of IRC § 107 put forward by the IRS in Warren, and modified § 107 to expressly limit the clergy housing allowance to the fair rental value of a minister's housing. 26 U.S.C. § 107. Any difference in opinion regarding § 107's scope that may be shown by the IRS's conduct in Warren is therefore irrelevant today. Even if Warren could be seen as some evidence to support the proposition that the government may in the future take a narrower view of the ministerial housing exemption statutes than the applicant would, the applicant has not shown that the government would concede any "_necessary_ elements to the proceeding." Perry, No. 09-16959, 2009 WL 3857201, at *6 (quoting Arakaki, 324 F.3d at 1086) (emphasis in Perry, internal quotations omitted).

In further support of his argument that the government cannot adequately represent his interests, the applicant asserts that it is possible that the government may not appeal an adverse ruling, whereas the applicant states that he would undoubtedly appeal if he were a party to this action. The court of appeals has allowed intervention of right post-judgment for the purpose of appealing. See Yniguez v. State of Ariz., 939 F.2d 727, 731-33 (9th Cir. 1991) (granting intervention of right to principal sponsor of ballot initiative for purposes of appeal when state

12

government decided not to appeal adverse district court ruling) (citing <u>Legal Aid Soc'y of Alameda County v. Brennan</u>, 608 F.2d 1319, 1328 (9th Cir. 1979) ("Post-judgment intervention for purposes of appeal may be appropriate if the intervenors act promptly after judgment, and meet traditional standing criteria.") (citations omitted)).  Therefore, the applicant can move to intervene for purposes of appeal should the government fail to appeal an adverse ruling.

The applicant also asserts that the named defendants face an inherent conflict of interest and cannot possibly represent his interests adequately because the IRS and California Franchise Tax Board stand to gain "a staggering windfall" of tax revenues if the statutes are ultimately struck down.  In essence, the applicant believes that the federal defendants have nothing to lose if the revenue statutes are overturned.  This reasoning would allow intervenors as of right in any suit challenging a provision of the Internal Revenue Code, and possibly in any suit challenging any other spending statute.

Furthermore, this cynical view of the United States government ignores the fact that the United States has consistently enforced the revenue statutes at issue here and the inherent interest the United States has in seeing its statutes upheld and enforced.  This speculation does not overcome the very strong presumption that the federal defendants will adequately represent the applicant's interests.  See <u>Prete v. Bradbury</u>, 438 F.3d 949, 957 (9th Cir. 2006) (rejecting applicant's argument that potential "budget constraints" of federal defendant establishes inadequate representation, and noting that

"[v]irtually all governments face budget constraints generally, and if such a basis were sufficient to establish inadequate representation, it would eliminate the presumption of adequate representation when the government and intervenor-applicant share the same interest.")

Finally, the applicant asserts that because the California Franchise Tax Board has not yet made an appearance in this action, there is no presumption that his interests as to the state statute being challenged in this action will be adequately represented. The applicant's motion was filed six days following the Complaint, which was filed before this court only one month ago. According to the docket in this case, the state defendant has not yet been served in this action. Potential intervenors cannot go around the showing required by Rule 24(a)(2) that existing parties may not adequately represent their interest simply by moving to intervene before the parties to the suit have appeared. Any determination that the State of California may not adequately represent the potential intervenor's interests with respect to the California statutes at issue are, therefore, premature.

B.  Permissive Intervention

Federal Rule of Civil Procedure 24(b)(1)(B) provides that on timely motion, the court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3).

14

Therefore, even if an applicant meets the requirements of Rule 24(b)(1)(B), the court "has discretion to deny permissive intervention." So. Cal. Edison Co. v. Lynch, 307 F.3d 794, 803 (9th Cir. 2002) (quoting Nw. Forest Res. Council v. Glickman, 82 F.3d 825, 839 (9th Cir. 1996).

In the Ninth Circuit, an applicant who wishes to intervene to litigate a claim on the merits must show (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common. So. Cal. Edison, 307 F.3d at 803 (quoting United States v. City of Los Angeles, 288 F.3d 391 (9th Cir. 2002)). Contrary to the applicant's assertions, permissive intervention "ordinarily requires independent jurisdictional grounds." Beckman Indus. Inc. v. Int'l Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992). The cases that the applicant cites, namely Portland Audobon Soc'y v. Hodel, 866 F.2d 302, 308 n.1 (9th Cir. 1989), and the cases quoted by the applicant therein, addressed the requirements for intervention as of right and are therefore inapplicable to a permissive intervention analysis. Because the applicant seeks permissive intervention in order to litigate this action on its merits, he must show that independent grounds for jurisdiction over his claims exist.

The judicial power of the federal courts is limited to "Cases" and "Controversies." U.S. Const. Art. III, § 1. Without this basic requirement met, a federal court lacks subject matter jurisdiction to hear a case. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992); see Fed. R. Civ. P. 12(b)(1). The doctrine

of standing is an "essential and unchanging part of the case-or-controversy requirement of Article III." <u>Defenders of Wildlife</u>, 504 U.S. at 560 (citing <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984)).  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975).  Article III standing requires that a plaintiff allege "a personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." <u>Allen v. Wright</u>, 468 U.S. at 751.

While the applicant does not concede that he lacks standing to bring an independent suit, he admits in his motion that a court would likely find no "case or controversy" existed unless and until the plaintiffs in this lawsuit succeeded. (Mot. Intervene 9:11-15.) Furthermore, in his Reply, the applicant makes no effort to show that independent grounds for jurisdiction exist.  Therefore, he does not meet the requirements for permissive intervention and his motion for permissive intervention must be denied.

The applicant requested in the alternative that he and Does 1-100 be granted amicus status in the pending litigation. The United States does not object. Therefore, court will grant the applicant's motion for leave to file a brief as amicus curiae.

///
///
///
///

        IT IS THEREFORE ORDERED that the applicant's motion to intervene be, and the same hereby is, DENIED.

        IT IS FURTHER ORDERED that the applicant's motion for leave to file a brief as amicus curiae be, and the same hereby is GRANTED.

DATED:   December 1, 2009

*[signature]*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE