1   EDMUND G. BROWN JR., State Bar No. 37100
    Attorney General of California
2   WILLIAM L. CARTER, State Bar No. 59215
    Supervising Deputy Attorney General
3   JILL BOWERS, State Bar No. 186196
    Deputy Attorney General
4     1300 I Street, Suite 125
      P.O. Box 944255
5     Sacramento, CA 94244-2550
      Telephone:  (916) 323-1948
6     Fax:  (916) 327-2247
      E-mail:  Jill.Bowers@doj.ca.gov
7   *Attorneys for Defendant Selvi Stanislaus*

8                      IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10                               CIVIL DIVISION

11

12

| | |
|---|---|
| 13  **FREEDOM FROM RELIGION** | 2:09-CV-02894-WBS-DAD |
| **FOUNDATION, INC.; PAUL STOREY;** | |
| 14  **BILLY FERGUSON; KAREN** | |
| **BUCHANAN; JOSEPH MORROW;** | |
| 15  **ANTHONY G. ARLEN; ELISABETH** | **REPLY BY DEFENDANT SELVI** |
| **STEADMAN; CHARLES AND** | **STANISLAUS TO PLAINTIFFS'** |
| 16  **COLLETTE CRANNELL; MIKE** | **MEMORANDUM OF POINTS AND** |
| **OSBORNE; KRISTI CRAVEN; WILLIAM** | **AUTHORITIES IN OPPOSITION TO** |
| 17  **M. SHOCKLEY; PAUL ELLCESSOR;** | **SELVI STANISLAUS'S MOTION TO** |
| **JOSEPH RITTELL; WENDY CORBY;** | **DISMISS** |
| 18  **PAT KELLEY; CAREY GOLDSTEIN;** | |
| **DEBORA SMITH; KATHY FIELDS;** | Date:        May 10, 2010 |
| 19  **RICHARD MOORE; SUSAN ROBINSON;** | Time:        2:00 p.m. |
| **AND KEN NAHIGIAN,** | Courtroom:  5 |
| 20                              Plaintiffs, | Judge:       The Hon. William B. Shubb |
| 21 | |
| v. | |
| 22 | |
| 23  **TIMOTHY GEITHNER, in his official** | |
| **capacity as Secretary of the United States** | |
| 24  **Department of the Treasury; DOUGLAS** | |
| **SHULMAN, in his official capacity as** | |
| 25  **Commissioner of the Internal Revenue** | |
| **Service; and SELVI STANISLAUS, in her** | |
| 26  **official capacity as Executive Director of the** | |
| **California Franchise Tax Board,** | |
| 27 | Trial Date    Not yet set. |
| Defendants. | Action Filed:  October 16, 2009 |
| 28 | |

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................ 1

Discussion ................................................................................................................... 5

    I.    Jurisdiction ....................................................................................................... 5

         A.    The sovereign immunity bar to Plaintiffs' claims against Stanislaus is not lifted by the *Ex parte Young* fiction. ................................... 5

         B.    Stanislaus is not amenable to suit under 42 U.S.C. § 1983 ....................... 8

         C.    Plaintiffs lack state taxpayer standing. ....................................................... 8

    II.    The clergy housing allowance exclusion does not violate the Establishment Clause. ............................................................................................................. 13

         A.    California's clergy housing allowance exclusion is constitutional under the accommodation principle. ......................................................... 13

         B.    California's clergy housing allowance exclusion passes the *Lemon* test. ......................................................................................................... 17

Conclusion ................................................................................................................ 19

# TABLE OF AUTHORITIES

**Page**

CASES

*ASARCO, Inc. v. Kadish*
490 U.S. 604 (1989) ....................................................................................... 6, 7, 11

*Bank v. Florida Prepaid Postsecondary Education Expense Board*
527 U.S. 666 (1999) ................................................................................................. 1

*Board of Education of Kiryas Joel Village School District v. Grumet*
512 U.S. 687 (1994) ........................................................................................ *passim*

*Bowen v. Kendrick*
487 U.S. 589 (1988) ............................................................................................... 11

*Braunfeld v. Brown*
366 U.S. 599 (1961) ............................................................................................... 17

*Cammack v. Waihee*
932 F.2d 765 (9th Cir. 1991) ........................................................................... 12, 13

*Church of the Brethren v. City of Pasadena*
196 Cal.App.2d 814 (1962) ................................................................................... 16

*Claflin v. Houseman*
93 U.S. 130 (1876) ................................................................................................... 6

*Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v.*
*Amos*
483 U.S. 327 (1987) ........................................................................................ *passim*

*DaimlerChrysler Corp. v. Cuno*
547 U.S. 332 (2006) ........................................................................................ *passim*

*Doremus v. Board of Education of Borough Hawthorne*
342 U.S. 394 (1952) ........................................................................................ *passim*

*East Bay Asian Local Development Corp. v. State of California*
24 Cal.4th 693 (2000) .................................................................................. 4, 15, 17

*Ex parte Young*
209 U.S. 123 (1908) ........................................................................................ 2, 5, 7

*Flast v. Cohen*
392 U.S. 83 (1968) .......................................................................................... *passim*

## TABLE OF AUTHORITIES
### (continued)

Page

*Frothingham v. Mellon*
  262 U.S. 447 (1923)..................................................................................... 2, 8, 9

*Ghazali v. Moran*
  46 F.3d 52 (9th Cir. 1995)................................................................................... 8

*Gillette v. United States*
  401 U.S. 437 (1971).......................................................................................... 17

*Grubb v. Public Utilities Commission of Ohio*
  281 U.S. 470 (1930)............................................................................................ 6

*Harwood v. Drown*
  __U.S.__, 129 S.Ct. 2108 (2009)........................................................................ 6

*Hein v. Freedom From Religion Foundation*
  551 U.S. 587 (2007)................................................................................... *passim*

*Hobbie v. Unemployment Appeals Commission of Florida*
  480 U.S. 136 (1987).......................................................................................... 17

*Hydrick v. Hunter*
  500 F.3d 978 (9th Cir. 2007)................................................................................ 7

*Idaho v. Coeur d'Alene Tribe of Idaho*
  521 U.S. 261 (1997)................................................................................ 2, 5, 6, 7

*Independent Living Center of Southern California v Maxwell-Jolly*
  572 F.3d 644 (9th Cir. 2009)................................................................................ 7

*Lemon v. Kurtzman*
  403 U.S. 602 (1971)................................................................................... *passim*

*Lundberg v. County of Alameda*
  46 Cal.2d 644 (1956) ........................................................................... 4, 14, 15, 18

*Pennhurst State School and Hospital v. Halderman (II)*
  465 U.S. 89 (1996)........................................................................................... 1, 5

*Pittman v. Oregon*
  509 F.3d 1065 (9th Cir. 2007)........................................................................... 7, 8

*Quern v. Jordan*
  440 U.S. 332 (1979)............................................................................................ 8

1
2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3
4

*Texas Monthly, Inc. v. Bullock*
    489 U.S. 1 (1989) ..........................................................................................*passim*

5

*United States v. Salerno*
    481 U.S. 738 (1987) ............................................................................................ 15

6
7
8

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*
    454 U.S. 464 (1982) ............................................................................................ 10

9

*Wallace v. Jaffree*
    472 U.S. 38 (1986) ............................................................................................. 17

10
11

*Walz v. Tax Commission of the City of New York*
    397 U.S. 664 (1970) ......................................................................................*passim*

12
13

*Warren v. Commissioner of Internal Revenue*
    2002 WL 3102765 (9th Cir. May 2, 2002) ........................................................ 16

14

*Warren v. Commissioner of Internal Revenue*
    302 F.3d 1012 (9th Cir. 2002) ........................................................................... 16

15
16

*Welch v. Texas Department of Highways and Public Transportation*
    483 U.S. 468 (1987 .............................................................................................. 7

17

*Will v. Michigan Department of State Police*
    491 U.S. 58 (1989) ........................................................................................... 1, 8

18
19

*Winn v. Arizona Christian School Tuition Organization*
    562 F.3d 1002 (9th Cir. 2009) .............................................................. 3, 10, 12, 13

20
21

*Zorach v. Clauson*
    343 U.S. 306 (1952) ........................................................................... 4, 13, 15, 18

22

STATUTES

23
24

26 United States Code
    § 107(2) ................................................................................................................ 1

25

28 United States Code
    § 1738 .................................................................................................................. 6

26
27

42 United States Code
    § 1981 .................................................................................................................. 8
    § 1983 ............................................................................................................... 1, 8

28

iv

Reply by Defendant Selvi Stanislaus to Plaintiffs' Memorandum of Points and Authorities in Opposition to Selvi
Stanislaus's Motion to Dismiss (2:09-CV-02894-WBS-DAD

# TABLE OF AUTHORITIES
### (continued)

Page

California Revenue and Taxation Code
   § 17131.6 .................................................................................................. 1, 3, 10
   § 17280 ..................................................................................................... 1, 3, 10
   § 17280(d) ..................................................................................................... 1, 14
   § 17280(d)(2) .................................................................................................... 1

CONSTITUTIONAL PROVISIONS

United States Constitution
   First Amendment ................................................................................................ 18
   Eighth Amendment ............................................................................................ 15
   Eleventh Amendment .................................................................................. 1, 5, 7
   Article I, § 8 ........................................................................................................ 3
   Article VI, § 2, cl. 2 ............................................................................................. 7

California Constitution
   Article IV, § 1 .............................................................................................. 3, 10
   Articles XIII, XIII A and XIII B .................................................................... 3, 10

COURT RULES

Federal Rules of Civil Procedure
   rule 12(b)(1) and (6) ............................................................................................ 5

Eastern District California Rule
   rule 230(c) ........................................................................................................... 8

OTHER AUTHORITIES

Alan Savidge, THE PARSONAGE IN ENGLAND 7-9 (1964) ........................................ 16

Cal. Stats. 1987, Chapter 1138, AB 53 ...................................................................... 3

Cal. Stats. 2005, Chapter 681, AB 115 ...................................................................... 3

v

Reply by Defendant Selvi Stanislaus to Plaintiffs' Memorandum of Points and Authorities in Opposition to Selvi
Stanislaus's Motion to Dismiss (2:09-CV-02894-WBS-DAD

**INTRODUCTION**

Defendant Selvi Stanislaus's motion to dismiss the Complaint for Declaratory and Injunctive Relief (Complaint) filed by Plaintiff Freedom From Religion Foundation and certain of its individual members, California state and federal taxpayers, should be dismissed for three reasons.  First, this Court lacks subject matter over Plaintiffs' state and federal constitutional claims challenging Stanislaus's enforcement of California's clergy housing allowance exclusion, as codified in California Revenue and Taxation Code sections 17131.6 and 17280(d)(2).[1] Stanislaus, the Executive Officer of the State of California Franchise Tax board, is sued only in her official capacity.  Plaintiffs' claims against her are barred by sovereign immunity and the Eleventh Amendment.

Stanislaus has not consented to this lawsuit, and Plaintiffs cite no statute purporting to waive sovereign immunity.  *College savings Bank v. Florida Prepaid Postsecondary Education Expense Board,* 527 U.S. 666, 669-670 (1999).  And the Eleventh Amendment bars federal courts from ordering state officials to conform their conduct to state law.  *Pennhurst State School and Hospital v. Halderman (II)*, 465 U.S. 89, 97-98 (1996).  Under no theory advanced by Plaintiffs in this lawsuit may they maintain their state constitutional claims against Stanislaus in this Court.

A state official sued only in her official capacity is not amenable to suit under Title 42, United States Code, section 1983.  *Will v. Michigan Department of State Police,* 491 U.S. 58, 71 (1989).  Thus Plaintiffs' federal statutory claims against Stanislaus must be dismissed.

---

[1] Hereinafter, references to section 17131.6 and 17280 are to these provisions of the California Revenue and Taxation Code.  Section 17131.6 modifies 26 U.S.C. § 107(2) "by substituting … the phrase 'the rental allowance paid to him or her as part of his or her compensation, to the extent used by him or her to rent or provide a home' in lieu of the phrase 'the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home and to the extent such allowance does not exceed the fair rental value of the home, including furnishings and appurtenances such as a garage, plus the cost of utilities[.]'" Section 17280(d) states that, "[n]o deduction shall be denied under this section for interest on a mortgage on, or real property taxes on, the home of the taxpayer by reason of the receipt of an amount as either … [a] military housing allowance[, or a] parsonage allowance excludable from gross income under Section 107 of the Internal Revenue Code."  Plaintiffs in this case object only to the parsonage allowance.  Cal. Rev. & Tax Code, § 17280(d)(2).  In this Reply, both the exemption from individual income tax created by section 17131.6 and the mortgage interest deduction permitted by section 17280(d)(2) are referred to collectively as the "clergy housing allowance exclusion."

1

1    (Complaint, p. 13:8-17.)  Nor does the *Ex parte Young* fiction lift the sovereign immunity bar to

2    Plaintiffs' federal constitutional claims against Stanislaus.  *Ex parte Young*, 209 U.S. 123 (1908)

3    Plaintiffs have not met their burden to show that this Court may "bypass the Eleventh

4    Amendment" either because "there is no state forum available to vindicate federal interests," or

5    because the federal law at issue in this case is outside the jurisprudence of the California courts —

6    a showing they cannot make because "[t]he Constitution and laws of the United States are not a

7    body of law external to the States," but "together form one jurisprudence."  *Idaho v. Coeur*

8    *d'Alene Tribe of Idaho,* 521 U.S. 261, 275-276 (1997) (defining the "instances" to which the

9    *Young* exception applies) (internal quotation marks and citation omitted).

10         Second, the Complaint should be dismissed because Plaintiffs lack taxpayer standing.

11    Since 1923, the Supreme Court has affirmed the general constitutional prohibition *against* federal

12    taxpayer standing.  *Frothingham v. Mellon*, 262 U.S. 447, 487 (1923).  In 1952, the Supreme

13    Court held that New Jersey taxpayers lacked state taxpayer standing to challenge a state law

14    authorizing public school teachers to read passages from the Bible in class, despite the allegation

15    of an Establishment Clause violation, because plaintiffs' grievance was "not a direct dollars-and-

16    cents injury but [was] a religious difference."  *Doremus v. Board of Education of Borough*

17    *Hawthorne,* 342 U.S. 394, 434 (1952).  Accord, *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 8

18    (1989) (Brennan, J., plurality) (ruling that publisher of nonreligious periodical had standing to

19    challenge Texas sales tax exemption that applied only to religious periodicals because live

20    controversy existed over the publisher's "right to recover the $149,107.74 it paid, plus interest.")

21    As reiterated by the Supreme Court most recently in *DaimlerChrysler Corp. v. Cuno*, 547 U.S.

22    332, 342-346 (2006), *Doremus* is still the law of the land on the question of state taxpayer

23    standing.  Like the plaintiffs in *Doremus,* Plaintiffs in this case fail to allege "a direct dollars-and-

24    cents injury" proximately caused by the California clergy housing allowance exclusion.  And

25    unlike the plaintiffs in *Texas Monthly,* Plaintiffs in this case fail to allege that they have filed a

26    claim for a refund, based on the clergy housing allowance exclusion, that has been denied.

27         In 1968, the Supreme Court "carved out a narrow exception to the general constitutional

28    prohibition against federal taxpayer standing[,]" based on the Establishment Clause.  *Hein v.*

2

1    *Freedom From Religion Foundation,* 551 U.S. 587, 593 (2007), construing *Flast v. Cohen,* 392

2    U.S. 83 (1968)*.*  The *Flast* court established a two-part test for federal taxpayer standing:  first,

3    the taxpayer must establish a "logical link" between that status and the challenged "exercises of

4    congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution."

5    *Freedom From Religion Foundation, supra,* 551 U.S. at 602, quoting *Flast,* 392 U.S. at 102-103.

6    Second, "the taxpayer must show that the challenged enactment exceeds specific limitations

7    imposed upon the exercise of the congressional taxing and spending power and not simply that

8    the enactment is generally beyond the powers delegated to Congress by Art. I, § 8."  *Id.*

9         Plaintiffs fail the first part of the *Flast* test for taxpayer standing because they have

10   established no such logical link between their status as taxpayers and the California clergy

11   housing allowance exclusion, which creates an exclusion from California's individual income tax.

12   Plaintiff Freedom From Religion Foundation alleges that it is a nonprofit organization.

13   (Complaint, p. 2:25-27.)  As such, it is unlikely ever to be subject to California's individual

14   income tax law.  Thus there is no logical link between the nonprofit organization Freedom From

15   Religion Foundation as a "taxpayer" and the challenged California statutes.

16        The individual Plaintiffs also fail the first part of the *Flast* test because they cannot show

17   that this exclusion effects any "extraction and spending of tax money in aid of religion."  *Winn v.*

18   *Arizona Christian School Tuition Organization*, 562 F.3d 1002, 1008 (9th Cir. 2009), quoting

19   *Flast, supra,* 392 U.S. at 106 (internal quotation marks omitted).  Plaintiffs fail the second part of

20   the *Flast* test for taxpayer standing with respect to California's clergy housing allowance

21   exclusion because sections 17131.6 and 17280 were enacted as part of federal tax conformity

22   legislation, enactments well within the state constitutional taxing and spending authority of the

23   California legislature.  Cal. Const., art. IV, § 1; Cal. Rev. & Tax. Code § 17280, Stats. 1987, ch.

24   1138, AB 53; Cal. Rev. & Tax. Code § 17131.6, Stats. 2005, ch. 691, AB 115.[2]  See generally,

25   Cal. Const., arts. XIII, XIII A and XIII B.

26

27        [2] Copies of the relevant parts of Cal. Stats. 1987, ch. 1138, AB 53, amending section 17280, and Cal. Stats. 2005, ch. 681, AB 115, adding section 17131.6, are attached as Exhibits A and B, respectively.

28

3

Plaintiffs also fail the second part of the *Flast* test because under the historical accommodation principle the state may refrain from taxing religious institutions without implicating the Establishment Clause, or the California "no appropriation" and "no preference" clauses.  "History is particularly compelling in the present case because of the undeviating acceptance given religious tax exemptions from our earliest days as a Nation."  *Walz v. Tax Commission of the City of New York,* 397 U.S. 664, 681 (1970); *Texas Monthly, supra,* 489 U.S. 1 at 37 (Scalia, J., dissenting); *Board of Education of Kiryas Joel Village School District v. Grumet,* 512 U.S. 687, 706-707 (1994) (holding that state legislature may not by special act define a school district limited to members of a single religious sect), citing *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos,* 483 U.S. 327 (1987) (exempting religious organization from Title VII's prohibition against religious discrimination in employment).  See *Lundberg v. County of Alameda,* 46 Cal.2d 644, 653-655 (1956) (tax exemption for religious schools does not violate California's "no aid" clause or federal Establishment Clause), citing inter alia *Zorach v. Clauson,* 343 U.S. 306, 314 (1952) (releasing public school children to receive offsite religious instruction during the school day does not violate the Establishment Clause) .

Third, Plaintiffs' Complaint against Stanislaus should be dismissed because the California clergy housing allowance exclusion survives scrutiny under the three-part test set out in *Lemon v. Kurtzman,* 403 U.S. 602, 612-613 (1971), which decision also guides "[t]he construction given by California courts to the establishment clause of article I, section 4" of the California Constitution. *East Bay Asian Local Development Corp. v. State of California,* 24 Cal.4th 693, 713 (2000).

The California clergy housing allowance exclusion passes the first part of the *Lemon* test because it was enacted as part of federal tax conformity legislation in 1987 and 2005, and because this exclusion, like the exemption in *Walz,* "is not sponsorship since the government does not transfer part of its revenue to churches but simply abstains from demanding that the church support the state[,]" thus "[t]here is no genuine nexus between tax exemption  and establishment of religion."  *Walz, supra,* 397 U.S. at 675-676.  The California clergy housing allowance exclusion passes the second part of the *Lemon* test because it does not have the principal or

1   primary effect of advancing or inhibiting religion.  As the *Walz* court held, a law does not have

2   the primary effect of advancing religion because religious groups benefit from it; rather, "it must

3   be fair to say that the government itself has advanced religion through its own activities and

4   influence."  *Corporation of the Presiding Bishop*, *supra,* 483 U.S. at 337.  And the California

5   clergy housing allowance exclusion passes the third part of the *Lemon* test because California's

6   abstention from taxing clergy housing allowances appropriates no direct aid to any religious

7   organization, and thus establishes no prohibited relationship between church and state.

8        Plaintiffs' Complaint against Stanislaus should therefore be dismissed.  Fed. R. Civ. P.

9   12(b)(1) and (6).

10                              **DISCUSSION**

11  **I.    JURISDICTION**

12       **A.    The Sovereign Immunity Bar to Plaintiffs' Claims against Stanislaus Is Not
             Lifted by the Ex parte Young Fiction.**
13

14       Stanislaus's motion to dismiss should be granted for lack of subject matter jurisdiction

15  because Plaintiffs' claims against her are barred by sovereign immunity.  Plaintiffs' reliance on

16  the *Ex parte Young* fiction to lift the sovereign immunity bar to their lawsuit is misplaced for two

17  reasons.  Plaintiffs' Memorandum of Points and Authorities in Opposition to Selvi Stanislaus's

18  Motion to Dismiss (Pl. Opp. to Stanislaus Motion), pp. 4-5, citing *Ex parte Young,* 209 U.S. 123

19  (1908).  First, the *Young* fiction only applies, if it applies at all, to Plaintiffs' federal claims.  This

20  court lacks jurisdiction to order a state official, like Stanislaus, to comply with state law.

21  *Pennhurst II*, *supra,* 465 U.S. at 98-99 (holding that the Eleventh Amendment bars federal court

22  from ordering state officials to conform their conduct to state law).  Thus, Plaintiffs' state

23  constitutional claims must be dismissed for lack of subject matter jurisdiction.  Fed. R. Civ. P.

24  12(b)(1).

25       Second, the Supreme Court of the United States has ruled that there are generally only two

26  instances in which the *Young* fiction applies.  *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. at

27  270-275.  "The first is where there is no state forum available to vindicate federal interests,

28  thereby placing upon Article III courts the special obligation to ensure the supremacy of federal

3876f019d502ff9e

1  statutory and constitutional law." *Id.* at 270.   But Plaintiffs fail even to allege that California

2  courts are an inadequate forum in which to vindicate any alleged violation of their federal

3  constitutional rights by Stanislaus, thus the "first instance" in which the Young exception may

4  apply is not satisfied here.   Because state courts of general jurisdiction and federal courts have

5  concurrent jurisdiction over federal constitutional claims, Plaintiffs cannot make this showing as a

6  matter of law.  *Harwood v. Drown*, ___U.S.___, 129 S.Ct. 2108 (2009).  "So strong is the

7  presumption of concurrency that it is defeated only in two narrowly defined circumstances: first,

8  when Congress expressly ousts state courts of jurisdiction, and second, when a state court refuses

9  jurisdiction because of a neutral state rule regarding the administration of the courts[.]"  129 S.Ct.

10  at 2114 (internal citations and quotation marks omitted.  Neither of these "narrowly defined

11  circumstances" applies to this case.

12        "[A] second instance in which *Young* may serve an important interest is when the case calls

13  for the interpretation of federal law."  *Coeur d'Alene Tribe*, 521 U.S. at 274.  And as to this

14  "second instance" involving cases, like this case, calling for the interpretation of federal

15  constitutional law, the Supreme Court has ruled that a plaintiff's invocation of federal law is an

16  insufficient basis for the federal court "to bypass the Eleventh Amendment":

17        Interpretation of federal law is the proprietary concern of state, as well as federal,
         courts.  It is the right and duty of the States, within their own judiciaries, to interpret
18        and to follow the Constitution and all laws enacted pursuant to it, subject to a
         litigant's right of review in this Court in a proper case.  The Constitution and laws of
19        the United States are not a body of law external to the States, acknowledged and
         enforced simply as a matter of comity.  The Constitution is the basic law of the
20        Nation, a law to which a State's ties are no less intimate than those of the National
         government itself.  The separate States and the Government of the United States are
21        bound in the common cause of preserving the whole constitutional order.  Federal and
         state law "together form one jurisprudence."  It would be error coupled with irony
22        were we to bypass the Eleventh Amendment, which enacts a scheme solicitous of the
         States, on the sole rationale that state courts are inadequate to enforce and interpret
23        federal rights in every case."

24  *Coeur d'Alene Tribe*, 521 U.S. at 275-276, quoting *Claflin v. Houseman*, 93 U.S. 130, 137

25  (1876).[3]  "What is really at stake where a state forum is available is the desire of the litigant to

26  _____
         [3]  Accord, *ASARCO, Inc. v. Kadish*, 490 U.S. 604, 617 (1989).  The ASARCO court noted
27  that "state courts ... possess the authority, absent a provision for exclusive federal jurisdiction, to
   render binding judicial decisions that rest on their own interpretations of federal law."  *Id.* citing
28  illustratively 28 U.S.C. § 1738 and *Grubb v. Public Utilities Commission of Ohio*, 281 U.S. 470
                                                                              (continued…)
                                      6

1   choose a particular forum versus the desire of the State to have the dispute resolved in its own

2   courts[,]" and "[t]he Eleventh Amendment's background principles of federalism and comity

3   need not be ignored in resolving these conflicting preferences." *Id..* at 277

4        Neither in their Complaint nor in the Opposition to Stanislaus's Motion do Plaintiffs allege

5   the unavailability of a state forum or the inadequacy of the California courts to redress

6   Stanislaus's alleged violation of their federal constitutional rights.  Thus the *Young* fiction does

7   not lift the sovereign immunity bar to their federal constitutional claims against her.  And see,

8   *Welch v. Texas Department of Highways and Public Transportation*, standing for the proposition

9   that the Eleventh Amendment bars citizen suits against a citizen's own state in federal court, thus

10  narrowing the *Young* exception further still.  *Welch v. Texas Department of Highways and Public*

11  *Transportation*, 483 U.S. 468 (1987) (plurality opinion).

12       Plaintiffs' reliance on *Independent Living Center of Southern California v. Maxwell-Jolly*

13  and *Pittman v. Oregon* to support their jurisdictional allegation is also misplaced because neither

14  of these cases addresses the limitations on the *Young* fiction prescribed by the Supreme Court in

15  *Coeur d'Alene Tribe.*  Pl. Opp. To Stanislaus Motion, pp. 4-5, citing *Independent Living Center*

16  *of Southern California v Maxwell-Jolly*, 572 F.3d 644, 660 (9th Cir. 2009), and *Pittman v.*

17  *Oregon*, 509 F.3d 1065, 1071 (9th Cir. 2007).  The *Independent Living Center* case is further

18  distinguishable from this case on its facts.  The state official in *Independent Living Center* waived

19  sovereign immunity by removing that case from state to federal court.  *Independent Living*

20  *Center, supra,* 572 F.3d at 662.  But Stanislaus has not waived sovereign immunity.  Plaintiffs'

21  reliance on *Hydrick v. Hunter* in support of their jurisdictional allegations is misplaced because

22  judgment in that case was vacated by the Supreme Court of the United States.  Pl. Opp. To

23  Stanislaus Motion, p. 5, citing *Hydrick v. Hunter*, 500 F.3d 978 (9th Cir. 2007), *cert. granted,*

24  *judgment vacated, and remanded,* ___U.S. __, 129 S.Ct. 2431 (2009).

25  ///

26  (...continued)
    (1930).  "Indeed, inferior federal courts are not required to exist under Article III, and the

27  Supremacy Clause explicitly states that 'the Judges in every State shall be bound' by federal
    law.'"  *ASARCO, supra,* quoting U.S. Const., Art. VI, § 2, cl. 2

28

7

**B.  Stanislaus Is Not Amenable to Suit under 42 U.S.C. § 1983.**

In their Opposition to Stanislaus's motion to dismiss, Plaintiffs do not oppose Stanislaus's showing that she is not amenable to suit under Title 42, United States Code, section 1983.  *Will v. Michigan Department of State Police,* 491 U.S. 58.  Because Plaintiffs waived their opposition to Stanislaus's motion to dismiss their section 1983 claims, those claims against Stanislaus should be dismissed.  Complaint, p. 13:12; E.D. Cal. R. 230(c); see *Ghazali v. Moran,* 46 F.3d 52, 53 (9th Cir. 1995) (holding that failure to follow a district court's local rules is a proper ground for dismissal).  And see, *Pittman v. Oregon, supra,* 509 F.3d at 1071 (noting that "states enjoy sovereign immunity from suits brought under both" 42 U.S.C. §§ 1983 and 1981), quoting *Quern v. Jordan*, 440 U.S. 332, 345 (1979) (ruling that § 1983 "'does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States' as required for an abrogation of sovereign immunity.")

**C.  Plaintiffs Lack State Taxpayer Standing.**

Plaintiffs' claims against Stanislaus should be dismissed because Plaintiffs lack state taxpayer standing.  Examination of the Supreme Court's analysis of taxpayer standing shows why this is so.

As a general rule the Supreme Court of the United States has long enforced a constitutional prohibition against federal taxpayer standing.  *Frothingham, supra,* 262 U.S. at 487 (denying federal taxpayer standing).  *Frothingham* holds that a federal taxpayer lacks standing to challenge the constitutionality of a federal statute because "[h]is interest in the moneys of the treasury — partly realized from taxation and partly from other sources — is shared with millions of others, is comparatively minute and indeterminable, and the effect upon future taxation, of any payment out of the funds, so remote, fluctuating and uncertain, that no basis is afforded for an appeal to the preventive powers of a court of equity."  *Id.*, 262 U.S. at 487.  As the Supreme Court has emphasized in the decades since *Frothingham* was decided, "[i]n light of the size of the federal budget, it is a complete fiction to argue that an unconstitutional federal expenditure causes an individual federal taxpayer any measurable economic harm."  *Freedom From Religion Foundation, supra,* 551 U.S. at 593 (denying taxpayer standing).

8

1    In *Doremus*, the Supreme Court denied that state taxpayers had standing to challenge a

2  New Jersey law authorizing school teachers to read passages from the Bible, despite the

3  allegation of an Establishment Clause violation, because plaintiffs' grievance was "not a direct

4  dollars-and-cents injury but [was] a religious difference." *Doremus, supra,* 342 U.S. at 434.

5  Accord, *Texas Monthly, supra,* 489 U.S. at 8 (ruling that publisher of nonreligious periodical had

6  standing to challenge Texas sales tax exemption that applied only to religious periodicals because

7  live controversy existed over the publisher's "right to recover the $149,107.74 it paid, plus

8  interest.") As reiterated by the Supreme Court most recently in *DaimlerChrysler Corp., supra,*

9  547 U.S. at 342-346, *Doremus* is still the law of the land on the question of state taxpayer

10  standing.  Like the plaintiffs in *Doremus,* Plaintiffs in this case fail to allege "a direct dollars-and-

11  cents injury" proximately caused by the California clergy housing allowance exclusion.  And

12  unlike the plaintiffs in *Texas Monthly,* Plaintiffs in this case fail to allege that they have filed a

13  claim for a refund, based on the clergy housing allowance exclusion, that has been denied.

14    In *Flast v. Cohen*, the Supreme Court "carved out a narrow exception to the general

15  constitutional prohibition against federal taxpayer standing."  *Freedom From Religion*

16  *Foundation, supra,* 551 U.S. at 593, citing *Flast, supra.*  The *Flast* court noted that the

17  Establishment Clause "does specifically limit the taxing and spending power conferred by

18  Article I, section 8, of the United States Constitution.  *Flast,* 392 U.S. at 105.  The *Flast* court

19  distinguished *Frothingham* on this basis:  "[T]he taxpayer in *Frothingham* failed to make any

20  additional claim that the harm she alleged resulted from a breach by Congress of the specific

21  constitutional limitations imposed upon an exercise of the taxing and spending power."  *Id.*

22    The *Flast* court "set out a two-part test whether a federal taxpayer has standing to challenge

23  an allegedly unconstitutional expenditure":

24    First, the taxpayer must establish a logical link between that status and the type of
     legislative enactment attacked.  Thus, a taxpayer will be a proper party to allege the

25    unconstitutionality only of exercises of congressional power under the taxing and
     spending clause of Art. I, § 8, of the Constitution.  It will not be sufficient to allege an

26    incidental expenditure of tax funds in the administration of an essentially regulatory
     statute. … Secondly, the taxpayer must establish a nexus between that status and the

27    precise nature of the constitutional infringement alleged.  Under this requirement, the
     taxpayer must show that the challenged enactment exceeds specific limitations

28    imposed upon the exercise of the congressional taxing and spending power and not

9

1    simply that the enactment is generally beyond the powers delegated to Congress by
2    Art. I, § 8.

3    *Freedom From Religion Foundation, supra*, 551 U.S. at 602, quoting *Flast, supra*, 392 U.S. at

4    102-103.

5          Plaintiffs fail the first part of the *Flast* test for taxpayer standing because they have

6    established no such logical link between their status as taxpayers and the California clergy

7    housing allowance exclusion.  Plaintiff Freedom From Religion Foundation alleges that it is a

8    nonprofit organization.  Complaint, p. 2:25-27.  As such, it is unlikely ever to be subject to

9    California's individual income tax law.  Thus there is no logical link between the nonprofit

10   organization Freedom From Religion Foundation as a "taxpayer" and the challenged California

11   statutes.  The individual Plaintiffs also fail the first part of the *Flast* test because they cannot show

12   that this exclusion effects any "extraction and spending of tax money in aid of religion."  *Winn,*

13   *supra,* 562 F.3d at 1008, quoting *Flast, supra,* 392 U.S. at 106 (internal quotation marks omitted).

14         Plaintiffs fail the second part of the *Flast* test for taxpayer standing with respect to

15   California's clergy housing allowance exclusion because sections 17131.6 and 17280 were

16   enacted as part of federal tax conformity legislation, enactments well within the state

17   constitutional taxing and spending authority of the California legislature.  Cal. Const., art. IV, § 1;

18   Ex. A and B, *attached*.  See generally, Cal. Const., arts. XIII, XIII A and XIII B.

19         In *Valley Forge Christian College v. Americans United for Separation of Church and State,*

20   *Inc.,* the Supreme Court both emphasized the narrowness of the *Flast* test, and applied it, to rule

21   that federal taxpayers lacked standing under the Establishment Clause to challenge the

22   conveyance of a 77-acre tract of surplus federal property by the Secretary of Health, Education

23   and Welfare (HEW) to the Valley Forge Christian College.  *Valley Forge Christian College v.*

24   *Americans United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982).  The Supreme

25   Court held that the *Valley Forge* taxpayers failed the first prong of the *Flast* test in two respects,

26   first, that the challenged action was not congressional but a decision by HEW, and second, the

27   property transfer was not an exercise of authority under the Taxing and Spending Clause but "was

28   an evident exercise of Congress' power under the Property Clause[.]"  *Id.* at 480.

10

1      In *Bowen v. Kendrick*, 487 U.S. 589 (1988), the Supreme Court found that federal taxpayers

2   had standing to bring an as-applied challenge to a federal statute that authorized grants to private

3   community service groups, including religious groups.  "But the key to that conclusion was the

4   Court's recognition that [the federal statute] was at heart a program of disbursements of funds

5   pursuant to Congress' taxing and spending powers, and that the plaintiffs' claims called into

6   question how the funds authorized by Congress were being disbursed *pursuant to the [act's]*

7   *statutory mandate.*"  *Freedom From Religion Foundation, supra*, 551 U.S. at 606-607 (emphasis

8   in the original), quoting *Bowen, supra,* 487 U.S. at 619-620 (internal quotation marks omitted).

9      In *DaimlerChrysler Corp. v. Cuno*, the Supreme Court reviewed its history of the denial of

10   federal taxpayer standing under Article III and denied state taxpayers' claim of standing to

11   challenge an Ohio statute granting state franchise tax credit to DaimlerChrysler.  *DaimlerChrysler*

12   *Corp. v. Cuno, supra,* 547 U.S. at 342-346.  In doing so, the Supreme Court found that the

13   rationale for requiring a concrete and particularized injury in the context of federal taxpayer

14   standing "applied with undiminished force to state taxpayers."  *Id.* at 345, citing *Doremus*, 342

15   U.S. 429.  "State policymakers, no less than their federal counterparts, retain broad discretion to

16   make 'policy decisions' concerning state spending 'in different ways … depending on their

17   perceptions of wise state fiscal policy and myriad other circumstances."  *DaimlerChrysler Corp.,*

18   547 U.S. at 346, quoting *ASARCO Inc. v. Kadish*, *supra*, 490 U.S. 605, 615 (internal quotation

19   marks omitted).  The *DaimlerChrysler Corp.* court held that the federal court may not assume "a

20   particular exercise" of state fiscal discretion in establishing standing:

21         Federal Courts may not assume a particular exercise of this state fiscal discretion in
           establishing standing:  a party seeking jurisdiction cannot rely on such speculative
22         inferences … to connect his injury to the challenged actions of the defendant.  Indeed,
           because state budgets frequently contain an array of tax and spending provisions, any
23         number of which may be challenged on a variety of bases, affording state taxpayers
           standing to press such challenges simply because their tax burden gives them an
24         interest in the state treasury would interpose the federal courts as virtually continuing
           monitors of the wisdom and soundness of state fiscal administration, contrary to the
25         more modest role Article III envisions for federal courts.

26   *DaimlerChrysler Corp.,* 547 U.S. at 346.  The Supreme Court held that "state taxpayers have no

27   standing under Article III to challenge state tax or spending decisions simply by virtue of their

28   status as taxpayers."  *Id.*  Thus, even assuming that the challenged individual income tax

1   exclusion is a subsidy — an assumption that Stanislaus denies — Plaintiffs lack state taxpayer

2   standing.

3       Plaintiffs in this case do not challenge any *Flast*-type "extraction" and spending of tax in

4   violation of the Establishment clause.  Their complaint against the clergy housing allowance

5   exclusion created by the challenged state statutes, like the grievance of the state taxpayers in

6   *Doremus* and *DaimlerChrysler*, is not the concrete and particularized injury recognized by the

7   Supreme Court of the United States as carving out the narrow Establishment Clause exception to

8   the constitutional prohibition against taxpayer standing.  *DaimlerChrysler Corp., supra,* 547 U.S.

9   at 345, citing *Doremus, supra.*

10      In light of Supreme Court precedent, it is clear that Plaintiffs' reliance on *Winn, supra,* 562

11   F.3d 1002, to support their standing to challenge California's clergy housing allowance exclusion

12   is misplaced.  As the *Winn* court noted, the *Flast* exception to the constitutional prohibition

13   against taxpayer standing "recognizes that the injury alleged in Establishment Clause challenges

14   to governmental spending arises not from the effect of the challenged program on the plaintiffs'

15   own tax burdens, but from the very extraction and spending of tax money in aid of religion."

16   *Winn, supra,* 562 F.3d at 1008, quoting *Flast, supra,* 392 U.S. at 106 (internal quotation marks

17   omitted).  Thus the dollar-for-dollar tax credit at issue in *Winn* (up to $500 for an individual or

18   $1,000 for married couples filing jointly), "deducted *after* taxpayers' tax liability has been

19   calculated," and permitting taxpayers to redirect their tax payments from the Arizona Department

20   of Revenue to private school tuition organizations (STOs), including religious STOs, was

21   precisely the kind of tax extraction and spending injury found to confer standing in *Flast.  Id.*

22   (emphasis in the original).

23      By contrast, the California clergy housing allowance exclusion is not a tax credit but an

24   exclusion from income which allows individual taxpayers "only to reduce their income subject to

25   taxation," a result not objectionable under *Winn* and the cases cited therein.  *Winn, supra,* 562

26   F.3d at 1008 (distinguishing tax credits from tax deductions).  Plaintiffs also err in their

27   contention that *Winn* changes the injury analysis described in *Cammack v. Waihee,* 932 F.2d 765

28   (9th Cir. 1991).  Pl. Opp. To Stanislaus Motion, p. 5.  Like the *DaimlerChrysler Corp.* court, the

12

1   *Cammack* court grounds its analysis of state taxpayer standing in the *Doremus* court's

2   requirement of a concrete and particularized injury.  *Cammack, supra,* 932 F.2d at 769.  The

3   *Cammack* court explained that "[t]he direct injury required by *Doremus* is established when the

4   taxpayer brings a good-faith pocketbook action; that is, when the challenged statute involves the

5   expenditure of state tax revenues."  *Id.*

6        Because the California clergy housing allowance exclusion challenged by Plaintiffs in this

7   case is not an extraction or expenditure of state taxes, Plaintiffs' cannot satisfy the Article III

8   injury requirement.  *Flast, supra;  DaimlerChrysler Corp., supra; Doremus, supra; Cammack,*

9   *supra;* and *Winn, supra.*  Plaintiffs lack state taxpayer standing to bring this lawsuit

10  **II.    THE CLERGY HOUSING ALLOWANCE EXCLUSION DOES NOT**
**VIOLATE THE ESTABLISHMENT CLAUSE.**

11

12      **A.    California's Clergy Housing Allowance Exclusion Is Constitutional under**
**the Accommodation Principle.**

13      Plaintiffs' reliance on *Texas Monthly, Inc. v. Bullock, supra,* 489 U.S. 1 (1989) (Brennan, J.,

14  plurality), in opposition to Stanislaus's motion to dismiss, raises the question whether the

15  accommodation principle — set out in *Zorach* and fundamental to the *Walz* Establishment Clause

16  analysis —  remains a viable constitutional principle.  See *Texas Monthly, supra,* 489 U.S. at 37

17  (Scalia, J., dissenting).  In *Board of Education of Kiryas Joel Village School District v. Grumet,*

18  *supra,* 512 U.S. 687, decided five years after *Texas Monthly,* the Supreme Court held that

19  "accommodation is not a principle without limit," but stopped short of defining where that limit

20  lies.

21      In doing so, the *Board of Education of Kiryas Joel Village School District* court made it

22  clear that *Texas Monthly,* striking down a sales tax exemption applicable only to religious

23  publications, is not controlling, but lies at one end of an Establishment Clause analytical spectrum,

24  with *Corporation of the Presiding Bishop v. Amos,* requiring only neutrality as among religions,

25  at the other:

26      Petitioners' proposed accommodation singles out a particular religious sect for special
        treatment, and whatever the limits of permissible legislative accommodations may be,
27      compare *Texas Monthly, Inc. v. Bullock, supra* (striking down law exempting only
        religious publications from taxation), with *Corporation of Presiding Bishop v. Amos,*

28

                                                    13

*supra* (upholding law exemption religious employers from Title VII), it is clear that neutrality as among religions must be honored.

*Board of Education of Kiryas Joel Village School District, supra,* 512 U.S. at 706-707.  The Establishment Clause neither requires California to offer the clergy housing allowance exclusion to other individuals,[4] nor prohibits it from offering this exclusion only to clergy, so along as it honors "neutrality among religions."  *Board of Education of Kiryas Village School District, supra,* citing *Corporation of Presiding Bishop v. Amos, supra.*  Thus, *Board of Education of Kiryas Joel Village School District* shows that the accommodation principle survives as an independent test, in addition to the *Lemon* test, for constitutionality under the Establishment Clause.  And under this historical principle, the California clergy housing allowance exclusion, like church property tax exemptions, survives Establishment Clause scrutiny.

The *Texas Monthly* court found that a Texas sales tax exemption applicable only to religious periodicals failed Establishment Clause scrutiny because it did not also apply "to a large number of nonreligious groups as well."  *Texas Monthly, supra,* 489 U.S. at 11-12 (Brennan, J., plurality) (citing, inter alia, *Walz, supra,* 397 U.S. at 673).  But as Justice Scalia, writing for the three-justice *Texas Monthly* dissent observed, "[t]his is not a plausible reading" of *Walz* because that court's "finding of valid legislative purpose … rested upon the more direct proposition that 'exemption constitutes a reasonable and balanced attempt to guard against' the 'latent dangers' of governmental hostility towards religion 'inherent in the imposition of property taxes.'"  *Texas Monthly, supra,* 489 U.S. at 37 (Scalia, J., dissenting), citing *Walz, supra.*  The *Walz* court "did not approve an exemption for charities that happened to benefit religion; it approved an exemption for religion *as* an exemption for religion."  *Id.* at 37-38 (emphasis in the original).

The *Texas Monthly* dissent acknowledged historical precedent for governmental accommodation of religion — historical precedent which the Supreme Court of California in *Lundberg, supra,* also recognized — and in doing so noted that "the limits of permissible state accommodation to religion are by no means co-extensive with the noninterference mandated by

---

[4] Respondent notes, however, that the mortgage interest deduction created by section 17280(d) also applies to military personnel.  *See* n. 1, *supra.*

14

the Free Exercise Clause." *Texas Monthly, supra,* 489 U.S. at 38 (Scalia, J., dissenting), quoting *Waltz, supra,* 397 U.S. at 673 (internal quotation marks and citations omitted). The dissent also reviewed applications of the accommodation principle "to permit special treatment of religion that was not required by the Free Exercise Clause":

> [I]n *Zorach* … we found no constitutional objection to a New York City program permitting public school children to absent themselves one hour a week for "religious observance and education outside the school grounds," *id.,* at 308[.] We applied the same principle only two terms ago in *Corporation of Presiding Bishop,* where, citing *Zorach* and *Walz,* we upheld a section of the Civil Rights Act of 1964 exempting religious groups (and only religious groups) from Title VII's antidiscrimination provisions. We found that "it is a permissible legislative purpose to alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions." 483 U.S., at 335[.] We specifically rejected the District Court's conclusion identical to that which a majority of the Court endorses today: that invalidity followed from the fact that the exemption "singles out religious entitles for a benefit, rather than benefiting a broad grouping of which religious organizations are only a part." *Id.,* at 333[.] We stated that the Court "has never indicated that statutes that give special consideration to religious groups are *per se* invalid." *Id.,* at 338 … [I]t was this same principle of permissible accommodation that we applied in *Walz.*"

*Texas Monthly, supra,* 489 U.S. at 39. And it is this same principle of permissible accommodation that the Supreme Court, five years after *Texas Monthly*, recognized in *Board of Education of Village of Kiryas Joel School District, supra,* 512 U.S. at 706-707, citing *Corporation of Presiding Bishop v. Amos, supra,* as a viable constitutional principle distinct from and in opposition to those expressed by the *Texas Monthly* plurality judgment. Accord, *Lundberg, supra*, 46 Cal.2d at 654-655, citing inter alia, *Zorach, supra,* 343 U.S. at 314.

This case is also distinguishable from *Texas Monthly* in that Texas appears to have conceded, apparently without argument, that a tax exemption is a "subsidy." See, e.g., *Texas Monthly, supra,* 489 U.S. at 10-11, 14. Stanislaus does not so concede. This assumption impermissibly shifts to the state the burden to prove constitutionality. But the Supreme Court of the United States has ruled that a challenger, like Plaintiffs here, attacking the facial validity of a legislative act, bear the burden of proof of unconstitutionality under federal law, a burden which Plaintiffs also bear under California law. *United States v. Salerno,* 481 U.S. 738, 745 (1987) (upholding constitutionality of federal Bail Reform Act against facial challenge based on procedural and substantive due process and the Eighth Amendment); *East Asian Local*

15

1   *Development Corp., supra,* 24 Cal.4th at 709.  Where, as here, Plaintiffs claim that a tax

2   exemption is an unconstitutional governmental "subsidy," they must meet their burden to prove it.

3   And under the accommodation principle this is a burden Plaintiffs cannot meet, because under

4   this principle governmental abstention from the taxation of churches is constitutional.

5          And it is precisely with respect to the historically longstanding principle of permissible

6   accommodation that the clergy housing allowance exclusion at issue in this case is distinguishable

7   from the sales tax at issue in *Texas Monthly.*  For, as the United States noted in its supplemental

8   brief in *Warren v. Commissioner of Internal Revenue*, "Church-provided housing is a tradition

9   that dates back at least to the 13th century."  Supplemental Brief for the Appellant, *Warren v.*

10  *Commissioner of Internal Revenue*, 2002 WL 3102765, p. 10 (9th Cir. May 2, 2002), citing, Alan

11  Savidge, THE PARSONAGE IN ENGLAND 7-9 (1964).[5]  As the United States observed, "a minister's

12  residence is traditionally more than mere housing":

13          A minister's home is typically used for religious purposes "such as a meeting place
            for various church groups and as a place for providing religious services such as
14          marriage ceremonies and individual counseling." *Immanuel Baptist Church v. Glass*,
            497 P.2d 757, 760 (Okla. 1972); *State v. Erickson*, 182 N.W. 315, 319-320 (S.D.
15          1921); see generally Maurice T. Brunner, Taxation: Exemption of Parsonage or
            Residence of Minister, Priest, Rabbi, or Other Church Personnel, 55 A.L.R.3d 356,
16          404 (1974) ("Most ministerial residences can be expected to be incidentally used to
            some considerable extent as an office, a study, a place of counseling, a place of small
17          meetings, such as boards or committees, and a place in which to entertain and lodge
            church visitors and guests.").
18

19  Supplemental Brief, *supra*, at p. 10.  The California Court of Appeal has held, on historical

20  principles, that tax exemptions for churches do not violate California's constitutional "no

21  appropriation" clause.  *Church of the Brethren v. City of Pasadena*, 196 Cal.App.2d 814, 821

22  (1962) (stating that "while the very universality of the practice of exempting church property

23  from taxation may not be a conclusive test of constitutionality, it *certainly* is a sound reason for

24  courts to be extremely reluctant to take any steps to disturb such a practice."  [Emphasis in the

25  original; citation and quotation marks omitted.])

26  _____

27          [5] A copy of this document is attached as Exhibit C.  For opinion, see *Warren v.
    Commissioner of Internal Revenue,* 302 F.3d 1012 , 284 F.3d 1322 , 282 F.3d 1119 (9th Cir.
    2002).

28

1    Viewed in light of this historical tradition, the clergy housing allowance exclusion is a

2    permissible accommodative exercise of the state's abstention from taxing church property.

3        **B.    California's Clergy Housing Allowance Exclusion Passes the *Lemon* Test.**

4        Plaintiffs' Complaint against Stanislaus should be dismissed because the California clergy

5    housing allowance exclusion survives scrutiny under the three-part test set out in *Lemon*, *supra,*

6    403 U.S. at 612-613, which decision also guides "[t]he construction given by California courts to

7    the establishment clause of article I, section 4" of the California Constitution.  *East Bay Asian*

8    *Local Development Corp., supra,* 24 Cal.4th 693, 713.  Further, in order to prove that the clergy

9    housing allowance exclusion fails as a matter of California law, Plaintiffs must show that the

10   challenged exclusion "presents a … total and fatal conflict with applicable constitutional

11   prohibitions … in all of its applications."  *East Asian Local Development Corp., supra,* 24 Cal.4th

12   at 709.

13       The California clergy housing allowance exclusion passes the first part of the *Lemon* test

14   because it was enacted as part of federal tax conformity legislation, and because this exclusion,

15   like the exemption in *Walz, supra,* 397 U.S. at 675-676, "is not sponsorship since the government

16   does not transfer part of its revenue to churches but simply abstains from demanding that the

17   church support the state[,]" thus "[t]here is no genuine nexus between tax exemption  and

18   establishment of religion."  *Id*.  Contrary to Plaintiffs' contention, the longstanding

19   accommodation principle has not historically been construed as merely co-extensive with what

20   the Free Exercise Clause requires in the context of regulatory legislation, and *Texas Monthly* is

21   not controlling as to this principle.  Cf. Pl. Opp. To Stanislaus Motion to Dismiss, p. 10:14-14:10,

22   with *Texas Monthly, supra,* 489 U.S. at 38 (Scalia, J., dissenting), observing that the Supreme

23   Court has "often made clear … that "the limits of permissible state accommodation to religion are

24   by no means co-extensive with the noninterference mandated by the Free Exercise Clause[,]"

25   citing *Walz, supra,* 397 U.S. at 673; *Hobbie v. Unemployment Appeals Commission of Florida*,

26   480 U.S. 136, 144-145 and n. 10 (1987); *Gillette v. United States,* 401 U.S. 437, 453 (1971);

27   *Braunfeld v. Brown*, 366 U.S. 599, 605-608 (1961) (plurality opinion); and *Wallace v. Jaffree*,

28   472 U.S. 38, 82 (1986) (O'Connor, J., concurring).  Indeed, as noted above, it is this very

17

1   principle of permissible accommodation that the Supreme Court, five years after *Texas Monthly*,

2   recognized in *Board of Education of Village of Kiryas Joel School District*, *supra,* 512 U.S. at

3   706-707, citing *Corporation of Presiding Bishop v. Amos, supra.*  Accord, *Lundberg, supra,* 46

4   Cal.2d at 654-655, citing inter alia, *Zorach, supra,* 343 U.S. at 314.  The continued viability of the

5   longstanding historical accommodation principle in First Amendment jurisprudence shows the

6   Supreme Court's recognition that government may, as it has from the time that the men who

7   wrote the religion clauses were disestablishing churches from government, refrain from taxing

8   churches without thereby impermissibly sponsoring religion.

9         The California clergy housing allowance exclusion passes the second part of the *Lemon* test

10   because it does not have the principal or primary effect of advancing or inhibiting religion.  A law

11   does not have the primary effect of advancing religion because religious groups benefit from it:

12         A law is not unconstitutional simply because it allows churches to advance religion,
      which is their very purpose. For a law to have forbidden "effects" under *Lemon*, it
13      must be fair to say that the government itself has advanced religion through its own
      activities and influence. As the Court observed in *Walz*, "for the men who wrote the
14      Religion Clauses of the First Amendment the 'establishment' of a religion connoted
      sponsorship, financial support, and active involvement of the sovereign in religious
15      activity."  [*Walz, supra*] 397 U.S., at 668[.]  Accord, *Lemon*, 403 U.S., at 612[.]

16   *Corporation of the Presiding Bishop v. Amos, supra,* 483 U.S. at 337  The California clergy

17   housing allowance exclusion does not connote "sponsorship, financial support and active

18   involvement of" California in religious activity.  The exclusion passes the second part of the

19   *Lemon* test.

20         And the California clergy housing allowance exclusion passes the third part of the *Lemon*

21   test because California's *abstention* from taxing clergy housing allowances appropriates no direct

22   aid to any religious organization, and thus establishes no prohibited relationship between church

23   and state.  As noted above, this individual income tax exclusion is not a subsidy — an issue

24   apparently conceded and hence not argued in *Texas Monthly, supra* — and does not

25   "impermissibly entangle[ ] church and state;" rather, the exclusion "effectuates a more complete

26   separation of the two" by excluding clergy housing, like church property, from the normative tax

27   base.  *Corporation of the Presiding Bishop v. Amos, supra,* 483 U.S. at 339.

28   / / /

18

1

## CONCLUSION

2      For the foregoing reasons, Defendant Selvi Stanislaus's motion to dismiss should be

3  granted.

4

5  Dated:  May 4, 2010                                    Respectfully Submitted,

6                                                         EDMUND G. BROWN JR.
                                                          Attorney General of California
7                                                         WILLIAM L. CARTER
                                                          Supervising Deputy Attorney General
8
                                                          ***/s/ Jill Bowers***
9
                                                          JILL BOWERS
10                                                         Deputy Attorney General
                                                          *Attorneys for Defendant Selvi Stanislaus*
11
   SA2010100223
12  10565197.doc

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Reply by Defendant Selvi Stanislaus to Plaintiffs' Memorandum of Points and Authorities in Opposition to Selvi
Stanislaus's Motion to Dismiss (2:09-CV-02894-WBS-DAD)