BENJAMIN B. WAGNER
United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814

JEREMY N. HENDON
RICHARD A. SCHWARTZ
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044-0683
Telephone: (202) 353-2466
Facsimile:  (202) 307-0054
Email: Jeremy.Hendon@usdoj.gov
           Richard.A.Schwartz@usdoj.gov

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC.; PAUL STOREY; BILLY FERGUSON; KAREN BUCHANAN; JOSEPH MORROW; ANTHONY G. ARLEN; ELISABETH STEADMAN; CHARLES AND COLLETTE CRANNELL; MIKE OSBORNE; KRISTI CRAVEN; WILLIAM M. SHOCKLEY; PAUL ELLCESSOR; JOSEPH RITTELL; WENDY CORBY; PAT KELLEY; CAREY GOLDSTEIN; DEBORA SMITH; KATHY FIELDS; RICHARD MOORE; SUSAN ROBINSON; AND KEN NAHIGIAN,<br><br>Plaintiffs,<br><br>v.<br><br>TIMOTHY GEITHNER, in his official capacity as Secretary of the United States Department of the Treasury; DOUGLAS SHULMAN, in his official capacity as Commissioner of the Internal Revenue Service; and SELVI STANISLAUS, in her official capacity as Executive Officer of the California Franchise Tax Board,<br><br>Defendants. | Civil No. 2:09-CV-02894-WBS-DAD<br><br>**UNITED STATES' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF UNITED STATES' RENEWED MOTION TO DISMISS**<br><br>Hearing Date:  July 18, 2011<br>Time:              2:00 p.m.<br>Courtroom:    5 |

COMES NOW, the Defendant, United States of America[1], by and through its undersigned counsel, hereby submits the following Memorandum of Points and Authorities in support of its Renewed Motion to Dismiss:

## I. INTRODUCTION

Plaintiffs are Freedom From Religion Foundation (hereafter "FFRF") and twenty-one named individuals (hereafter "Plaintiffs"). The named individuals allege that they are members of FFRF and are taxpayers residing in the Eastern District of California opposed to government endorsement of religion. See Amended Complaint for Declaratory and Injunctive Relief ("Amended Complaint"), ¶¶ 6-28. Plaintiffs allege that they have suffered injuries because I.R.C. § 107[2] "provide[s] economic benefits for 'ministers of the gospel' that are not provided to other taxpayers, including federal taxpayers who are plaintiff members of FFRF in the Eastern District of California."[3] Id. at ¶ 51.

Plaintiffs do not have standing to bring this suit because the only injuries they allege are the result of their status as purportedly disadvantaged taxpayers. They have not suffered the type of concrete, particularized injury fairly traceable to § 107 that is a necessary prerequisite to establish Article III standing. The fact that Plaintiffs have not suffered any injury in fact precludes standing even under the narrow exception established by Flast v. Cohen, 392 U.S. 83 (1968), which allows taxpayers to challenge certain violations of the Establishment Clause of the First Amendment of the

---

[1] Plaintiffs named Timothy Geithner, in his official capacity as the Secretary of United States Department of Treasury, and Douglas Shulman, in his official capacity as Commissioner of the Internal Revenue Service, as defendants. See Amended Complaint, 1. It is well established that such a suit, one against a federal employee in his official capacity, is essentially a suit against the United States. See Dugan v. Rank, 372 U.S. 609 (1962); Atkinson v. O'Neil, 867 F.2d 589, 590 (10th Cir. 1989); Burgos v. Milton, 709 F.2d 1 (1st Cir. 1983); Hutchinson v. United States, 677 F.2d 1322, 1327 (9th Cir. 1982). Thus, the proper federal defendant is the United States of America.

[2] All statutory references refer to the Internal Revenue Code, (26 U.S.C.) unless otherwise noted. All regulations refer to Treasury Regulations (26 C.F.R.).

[3] This Court previously dismissed Plaintiffs' claim that § 265(a)(6) is unconstitutional and, for that reason, the United States does not seek to dismiss that claim in this renewed motion. However, for the same reasons why Plaintiffs lack standing to bring their claim regarding § 107, they also lack standing to bring their claim regarding § 265(a)(6). See Memorandum and Order Re: Motions to Dismiss, pp. 25-27 (Doc. No. 62) ("Order").

MEMORANDUM IN SUPPORT OF
UNITED STATES' RENEWED
MOTION TO DISMISS                –1–

United States Constitution. Plaintiffs allege that they have standing to challenge a tax exemption by virtue of their status as taxpayers, but Plaintiffs' claims are beyond the scope of the narrow <u>Flast</u> exception, as explained most recently in <u>Ariz. Christian Sch. Tuition Org. v. Winn</u>, 131 S. Ct. 1436 (2011) (hereafter "<u>ACSTO</u>"). As the Supreme Court made clear in <u>ACSTO</u>, the <u>Flast</u> exception can only be used to challenge governmental expenditures, not a credit or exemption afforded to another taxpayer. Because Plaintiffs do not have standing, a constitutional requirement in order for federal courts to have jurisdiction, Plaintiffs' Amended Complaint must be dismissed.

## II. QUESTION PRESENTED

Do Plaintiffs have standing to challenge the constitutionality of § 107?[4]

## III. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(1) allows a defendant to move to dismiss an action for lack of subject matter jurisdiction. On such a motion, the plaintiff bears the burden of establishing that subject matter jurisdiction exists. See <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994). If a plaintiff has not established Article III standing for a federal court to have subject matter jurisdiction, the plaintiff's claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). See <u>Oregon v. Legal Servs. Corp.</u>, 552 F.3d 965, 969 (9th Cir. 2009).

## IV. RELEVANT STATUTES

26 U.S.C. § 107 provides certain taxpayers with an exclusion from income for amounts attributable to employer-provided housing and housing allowances. The statute states:

§ 107. Rental value of parsonages.

In the case of a minister of the gospel, gross income does not include--
  (1) the rental value of a home furnished to him as part of his compensation; or
  (2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home and to the extent such allowance does not exceed the fair rental value of the home, including furnishings and appurtenances such as a garage, plus the cost of utilities.

---

[4] For purposes of this motion, the only legal question presented is whether Plaintiffs have established that they have standing to challenge the constitutionality of § 107. However, the United States continues to maintain the correctness of each of the arguments discussed in the United States' Memorandum of Points & Authorities in Support of the United States' (first) Motion to Dismiss (Doc. No. 38-2).

MEMORANDUM IN SUPPORT OF
UNITED STATES' RENEWED
MOTION TO DISMISS                      –2–

## V.  DISCUSSION

**A.    This Court's previous decision regarding standing in this case.**

On May 21, 2010, this Court denied the United States' motion to dismiss Plaintiffs' complaint finding, in relevant part, that Plaintiffs had established that they have standing as federal taxpayers. See Order, pp. 9-14.  This Court's decision was based in large part on the Ninth Circuit's decision in Winn v. Arizona Christian Schools Tuition Organization, 562 F.3d 1002 (9th Cir. 2009) which found, in relevant part, that taxpayer standing existed to allow a challenge to a state tax credit program the plaintiffs claimed impermissibly benefitted parochial schools.  Relying on Winn, this Court refused to make a distinction for taxpayer standing purposes between tax credits, exemptions, and deductions and ultimately found that taxpayer standing is not limited to situations where the Government extracts money from dissenters and provides it directly in aid or establishment of religion.  See Order, pp. 12-13.  This Court also found important that the "Supreme Court has decided countless cases where a tax credit, deduction, or exemption was alleged to violate the Establishment Clause and either did not address the issue of taxpayer standing or affirmatively decided that the challengers did have standing."  See id. at 11 (citations omitted).  Finally, this Court concluded that "Flast has never been interpreted to be so limited as to prohibit plaintiffs from challenging tax benefits that by their very terms accrue only to certain religious authorities simply because the government has chosen to provide financial aid through exclusions or exemptions from taxable income under the tax code rather than though direct grants."  See id. at 13-14.

After this Court's May 21, 2010 Order, the parties requested, and this Court granted, a stay of this matter pending the Supreme Court's decision in ACSTO.  On April 4, 2011, the Supreme Court overruled the Ninth Circuit, specifically finding that taxpayer standing did not exist and disagreeing with the Ninth Circuit's interpretation of the Flast exception to the general bar regarding taxpayer standing.  This Court then granted the Defendants' unopposed request to file renewed motions to dismiss the Amended Complaint based on this change in intervening law regarding taxpayer standing.

MEMORANDUM IN SUPPORT OF
UNITED STATES' RENEWED
MOTION TO DISMISS                              –3–

For the reasons set forth below, this Court should reconsider its previous ruling, find that Plaintiffs have not and cannot establish that they have taxpayer standing to bring this suit, and dismiss the Amended Complaint.

**B.       Article III standing limits the exercise of the judicial power to Cases or Controversies.**

Article III of the United States Constitution requires that the federal judiciary resolve only "Cases" or "Controversies." U.S. Const. Art. III, § 2, cl. 1.  The Supreme Court has long interpreted Article III's case-or-controversy requirement to limit the federal judiciary's exercise of jurisdiction to plaintiffs who have sufficiently established "Article III standing."  See Hein v. Freedom From Religion Foundation, 551 U.S. 587, 597-598 (plurality opinion) (2007) ("Article III standing . . . enforces the Constitution's case-or-controversy requirement" (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006) (internal citations omitted)).  For over 200 years, the federal judiciary has limited its exercise of power "solely, to decide on the rights of individuals," Marbury v. Madison, 1 Cranch 137, 170 (1803), and therefore has refrained from reviewing the constitutionality of statutes except "when the justification for some direct injury suffered or threatened, presenting a justiciable issue, is made to rest upon such an act."  Frothingham v. Mellon, 262 U.S. 447, 488 (1923).

Thus, the Supreme Court has held that standing requires a "<u>personal</u> injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  Hein, 551 U.S. at 598 (emphasis added) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)); see also Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471-472 (1982) ("At an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'"  (quoting Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 (1979))).  To that end, a plaintiff's injury must require the adjudication of a personal interest rather than a general one; "[a] plaintiff who seeks to invoke the federal judicial power must assert more than just the 'generalized interest of all citizens in constitutional governance.'" ACSTO, 131 S. Ct. at 1441-42 (quoting Schlesinger v. Reservists Comm. to Stop the

MEMORANDUM IN SUPPORT OF
UNITED STATES' RENEWED
MOTION TO DISMISS                           –4–

War, 418 U.S. 208, 217 (1974)).  As a principal means of limiting "federal-court jurisdiction to actual cases or controversies," Article III standing is "fundamental to the judiciary's proper role in our system of government."  Hein, 551 U.S. at 598 (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997) (internal citations omitted)).  As such, federal courts may not waive standing requirements in order to exercise jurisdiction, and must "refrai[n] from passing upon the constitutionality of an act . . . unless obliged to do so in the proper performance of [their] judicial function, when the question is raised by a party whose interests entitle him to raise it."  Id. (citing Valley Forge, 454 U.S. at 474) (internal citations omitted) (bracketed material in original)).

The party invoking federal court jurisdiction bears the burden of proof of establishing each element of standing.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Thus, in order to have standing, a plaintiff bears the burden of showing "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Friends of the Earth, Inc. v. Laidlaw Environmental Services, 528 U.S. 167, 180-81 (2000).  Moreover, "when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish."  Lujan, 504 U.S. at 562.

**C.    Taxpayer standing is generally not allowed.**

Because a plaintiff must allege some concrete and particularized injury redressable by a favorable decision, the Supreme Court has adhered to the longstanding rule established in Frothingham v. Mellon, 262 U.S. 447 (1923), and affirmed in Doremus v. Board of Ed. of Hawthorne, 342 U.S. 429, 433 (1952), to deny standing to a plaintiff alleging an injury that arises solely by virtue of his or her status as a taxpayer.  See Hein, 551 U.S. at 601 ("'[T]he interests of a taxpayer in the monies of the federal treasury are too indeterminable, remote, uncertain and indirect to furnish a basis for an appeal to the preventive powers of the Court over their manner of expenditure.'"  (quoting Doremus, 342 U.S. at 433)).  Standing requires that a plaintiff suffer an injury in fact, regardless of what governmental activity is challenged; the effect of the challenged

MEMORANDUM IN SUPPORT OF
UNITED STATES' RENEWED
MOTION TO DISMISS                –5–

governmental activity on a plaintiff's tax liability fails to provide a "direct and particular financial interest" sufficient to constitute an injury in fact. Doremus, 342 U.S. at 434-435 (rejecting a state taxpayer's claim of standing to challenge a state law authorizing public school teachers to read from the Bible).

Consequently, the Supreme Court has held that no injury in fact was alleged by plaintiffs who argued that they suffered an injury because tax benefits were accorded to someone other than the plaintiff. See ACSTO, 131 S. Ct. at 1443-44 (refusing to find an injury in fact to taxpayers challenging a tax credit because "claims of taxpayer standing rest on unjustifiable economic and political speculation"). In ACSTO, the Court was careful to observe that traditional standing requirements are not met when a plaintiff alleges standing on the basis of his or her status as a taxpayer, "even if one assumes that an expenditure or tax benefit depletes the government's coffers." Id. at 1444 (citing DaimlerChrysler, 547 U.S. at 344). The Court held that no injury in fact could be presumed because such a finding would rely on speculation that "lawmakers react to revenue shortfalls by increasing respondents' tax liability." Id. (citing DaimlerChrysler, 547 U.S. at 344). The Court also observed that a finding of causation would require the additional determination that any tax increase imposed on the plaintiff would be traceable to the budget shortfall created by the challenged tax benefit. Id. Moreover, the Court held that no redressability could be proven because a plaintiff would also have to establish that the relief sought (i.e., an injunction prohibiting the administration of the tax benefit) would cause "legislators to 'pass along the supposed increased revenue in the form of tax reductions.'" Id. (citing DaimlerChrysler, 547 U.S. at 344). Because such determinations are "speculative," "conjectural" and "of a general character, not particular to certain persons," the Court held that status as a taxpayer does not result in an injury in fact sufficient to establish standing to challenge a tax credit, let alone a tax exemption. Id.

**D.    The Flast exception to the general prohibition against taxpayer standing is narrowly construed and inapplicable to this case.**

In Flast, the Supreme Court created a narrow exception to the Frothingham prohibition against taxpayer standing where a plaintiff alleges a violation of the Establishment Clause. Under

MEMORANDUM IN SUPPORT OF
UNITED STATES' RENEWED
MOTION TO DISMISS                    –6–

the <u>Flast</u> exception, a plaintiff must satisfy a two-part test created in consideration of Article III's requirements: "First, the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. . . . Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged." <u>Flast</u>, 392 U.S. at 102. The Court strictly construed the nexus requirement to narrow the applicability of its exception. <u>Id</u>. ("It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute.").

Importantly, <u>Flast</u> did not abrogate the Article III requirement that a plaintiff allege a concrete and particularized injury in fact. <u>See</u> <u>Flast</u>, 392 U.S. at 106. Indeed, the Court was careful to emphasize that an injury in fact was shown in that case only because the Establishment Clause specifically protects taxpayers against use of the taxing and spending power in aid of religion, distinguishing the injury to the taxpayer in <u>Frothingham</u> who merely protested the additional tax burden imposed by congressional appropriations to which she objected. <u>Id</u>. at 105 ("the taxpayer in <u>Frothingham</u> failed to make any additional claim that the harm she alleged resulted from a breach by Congress of the specific constitutional limitations imposed upon an exercise of the taxing and spending power"). By the same token, the Court distinguished the plaintiff in <u>Flast</u> from the plaintiff in <u>Doremus</u>, who had challenged a statute with at most an "incidental expenditure of tax funds," even though the statute provided for the recitation of Bible passages in public schools. <u>Id</u>. at 102. The Court held that the Establishment Clause limits Congress' taxing and spending power, observing that James Madison and the other drafters of the Establishment Clause "designed [it] as a specific bulwark against such potential abuses of governmental power," in apprehension of "'authority which can force a citizen to contribute three pence only of his property for the support of any one establishment.'" <u>Id</u>. at 103-104 (quoting 2 <u>Writings of James Madison</u> 183, 186 (Hunt ed. 1901)). Therefore, the <u>Flast</u> exception always requires a taxpayer-plaintiff to allege a forcible contribution of his or her taxes to aid religion:

> The taxpayer's allegation in such cases would be that <u>his tax money</u> is being <u>extracted and spent</u> in violation of specific constitutional protections against such abuses of legislative power. Such an <u>injury</u> is appropriate for judicial redress, and the taxpayer has established the

MEMORANDUM IN SUPPORT OF
UNITED STATES' RENEWED
MOTION TO DISMISS                          –7–

1    necessary nexus between his status and the nature of the allegedly unconstitutional action to
     support his claim of standing to secure judicial review.

2 Id. at 105 (emphasis added). Even Justice Harlan, who dissented on the grounds that the Flast test's

3 historical formulation was untenable, nonetheless agreed with the Court's underlying reasoning that

4 standing could be shown in Flast because the plaintiff had suffered an injury in fact. Id. at 125

5 (Harlan, J. dissenting) ("A taxpayer's claim under the Establishment Clause is not merely one of

6 ultra vires, but one which instead asserts an abridgment of individual religious liberty and a

7 governmental infringement of individual rights protected by the Constitution." (internal quotation

8 marks omitted)).

9        As the Supreme Court most recently explained in ACSTO, though Flast held that a taxpayer

10 could have standing to allege violations of the Establishment Clause's specific limit on the "taxing

11 and spending power," standing could be established only if the plaintiffs had suffered an injury in

12 fact under those circumstances. See ACSTO, 131 S. Ct. at 1446. Such an injury would be that

13 "their property is transferred through the Government's Treasury to a sectarian entity." Id. (emphasis

14 added). The Court explicitly referenced the Flast Court's reliance on the history of the adoption of

15 the Establishment Clause, including James Madison's Memorial and Remonstrance Against

16 Religious Assessments, observing that a cognizable injury is only created by virtue of government

17 action that forces taxpayers to contribute their own money to a sectarian entity. Id. ("Any such

18 taking, even one amounting to 'three pence only,' violates conscience.") (emphasis added) (citing

19 Flast, 392 U.S. at 103). "Flast thus 'understood the "injury" alleged in Establishment Clause

20 challenges to federal spending to be the very "extract[ion] and spen[ding]" of 'tax money' in aid of

21 religion alleged by a plaintiff." Id. (citing DaimlerChrysler, 547 U.S. at 348). As such, Flast can

22 and should only be relied upon to the extent that a plaintiff challenges a governmental expenditure of

23 funds attributable to taxes imposed on the plaintiff. Id.

24       Consistent with Flast and the particular considerations of the Establishment Clause, the Court

25 has limited taxpayer standing under the Flast exception to allegations that Congress has violated the

26 Establishment Clause's limits on its power to exercise its taxing and spending power under Article I,

27
28 MEMORANDUM IN SUPPORT OF
   UNITED STATES' RENEWED
   MOTION TO DISMISS                    –8–

§ 8 of the Constitution. See, e.g., Bowen v. Kendrick, 487 U.S. 589, 618-619 (1988) (granting standing to plaintiffs challenging a federal program's disbursal of funds to sectarian grantees pursuant to Congress' taxing and spending powers). Moreover, the Court has largely confined application of the Flast exception to its facts: where a spending program authorized by Congress violates the Establishment Clause by spending tax dollars in support of religion. See Hein, 551 U.S. at 609-610. The Court has specifically declined to extend application of the Flast exception to situations involving the taxation of third parties, but where there is no actual expenditure, let alone an expenditure of taxes paid by a plaintiff. See ACSTO, 131 S. Ct. at 1445 ("In Flast, by contrast, the allegation was that the Federal Government violated the Establishment Clause in the exercise of its legislative authority both to collect and spend tax dollars.") (citing Flast, 392 U.S. at 103) (emphasis added).

**E.     The Flast exception is necessarily limited to actions challenging government spending and does not create standing for actions challenging the tax treatment of third parties.**

The Supreme Court consistently has held that government action does not violate the Establishment Clause unless it involves some government expenditure. See, e.g., Rosenberger v. Rectors and Visitors of University of Virginia, 515 U.S. 819, 842-843 (1995) ("The government usually acts by spending money."). In Flast, the Court required congressional spending as a precondition to finding an injury caused by a violation of the Establishment Clause. Flast, 392 U.S. at 102 ("Thus, our point of reference in this case is the standing of individuals who assert only the status of federal taxpayers and who challenge the constitutionality of a federal spending program.") (emphasis added). In Flast itself, the Court explicitly distinguished injuries allegedly resulting from taxing as opposed to spending:

> We do note, however, that the challenged tax in Murdock [v. Commonwealth of Pennsylvania, 319 U.S. 105 (1943)] operated upon a particular class of taxpayers. When such exercises of the taxing power are challenged, the proper party emphasis in the federal standing doctrine would require that standing be limited to the taxpayers within the affected class.

Id. at 104 n.25 (emphasis added). By denying the claims of taxpayers who failed to assert a nexus to a program of government spending, the Court implicitly affirmed this limitation the following term

MEMORANDUM IN SUPPORT OF
UNITED STATES' RENEWED
MOTION TO DISMISS                    --9--

in Walz v. Tax Com. of New York. 397 U.S. 664, 676 (1970) ("There is no genuine nexus between tax exemption and establishment of religion."). In ACSTO, the Court clarified that it was the combination of "extraction and spending" that was necessary to satisfy the injury in fact requirement under the Flast exception. See ACSTO, 131 S. Ct. at 1447 ("[T]ax credits and governmental expenditures do not both implicate individual taxpayers in sectarian activities."). In both ACSTO and Flast, the Court stated that such a distinction is essential to maintaining the Article III requirement that the injury be "appropriate for judicial redress." Id. at 1446; Flast, 392 U.S. at 106.

The Court's holding in Flast necessarily limited its scope to government programs involving the expenditure of a taxpayer's taxes yet still giving rise to a particularized and redressable injury in fact fairly traceable to the congressional expenditure. See Flast, 392 U.S. at 106. The exception's limited scope was recognized by each of the concurring and dissenting opinions, which all observed that the holding was limited to taxpayer challenges to federal spending programs. See id. at 107 (Douglas, J. concurring) ("The case or controversy requirement comes into play only when the Federal Government does something that affects a person's life, his liberty, or his property."); id. at 114 (Stewart, J. concurring) ("I join the judgment and opinion of the Court, which I understand to hold only that a federal taxpayer has standing to assert that a specific expenditure of federal funds violates the Establishment Clause of the First Amendment. Because that clause plainly prohibits taxing and spending in aid of religion, every taxpayer can claim a personal constitutional right not to be taxed for the support of a religious institution."); id. at 115 (Fortas, J. concurring) ("I would confine the ruling in this case to the proposition that a taxpayer may maintain a suit to challenge the validity of a federal expenditure on the ground that the expenditure violates the Establishment Clause."); id. at 117 (Harlan, J. dissenting) ("They present the question whether federal taxpayers qua taxpayers may, in suits in which they do not contest the validity of their previous or existing tax obligations, challenge the constitutionality of the uses for which Congress has authorized the expenditure of public funds."). Thus, as the Flast court understood it, a plaintiff only alleges an injury suffered by virtue of his or her status as a taxpayer when the injury arises from having his or her tax dollars spent in a way inconsistent with the Establishment Clause.

MEMORANDUM IN SUPPORT OF
UNITED STATES' RENEWED
MOTION TO DISMISS                –10–

In ACSTO, the Supreme Court clarified what constitutes an "expenditure" for purposes of the Flast exception. In ACSTO, Arizona offered taxpayers dollar-for-dollar tax credits for their contributions to school tuition organizations ("STOs"), some of which were sectarian. See ACSTO, 131 S. Ct. at 1440. However, the challenged enactment did not involve the expenditure of any government funds. Id. at 1447. The respondents nonetheless alleged that Arizona's diminished revenues constituted a "government spending program that distributes state tax revenues" and a "tax expenditure." See Brief for Respondents, 2010 WL 3624706, *26, *44 (filed Sep. 15, 2010). However, the Supreme Court rejected the respondents' arguments, holding that tax benefits and outlays of funds by the government are qualitatively different for Establishment Clause purposes. See ACSTO, 131 S. Ct. at 1447 (The distinction between governmental expenditures and tax credits refutes respondents' assertion of standing. . . . The STO tax credit is not tantamount to a religious tax or to a tithe and does not visit the injury identified in Flast."). The Supreme Court noted that it is the specific extraction of funds from a dissenter from the Government which is then given directly to aid or establish religion that is the necessary requirement for the narrow Flast exception to apply. See id. at 1447-48. When no money is taken from a plaintiff pursuant to a statute granting a tax credit or a tax exemption, there can be no injury in fact. Id. ("When the government declines to impose a tax, by contrast, there is no connection between dissenting taxpayer and alleged establishment.").

The Supreme Court's opinion in ACSTO also observed that denying taxpayer standing in cases challenging tax benefits afforded to a third party would not necessarily insulate such provisions from judicial review. Referring to the plaintiffs in Texas Monthly v. Bullock, 489 U.S. 1 (1989), the Court implied that an injury in fact could be properly alleged in a case where the challenged tax benefit was not facially applicable to the plaintiff. See ACSTO, 131 S. Ct. at 1449 ("[I]f a law or practice, including a tax credit, disadvantages a particular religious group or a particular nonreligious group, the disadvantaged party would not have to rely on Flast to obtain redress for a resulting injury." (citing Texas Monthly, 489 U.S. at 8)). The plaintiff in Texas Monthly had attempted to take, and was denied, the challenged tax exemption. See Texas Monthly, 489 U.S. at 8. This gave rise to a concrete, particularized, fairly traceable, and likely redressable

MEMORANDUM IN SUPPORT OF
UNITED STATES' RENEWED
MOTION TO DISMISS                –11–

injury in fact. Id. ("A live controversy persists over Texas Monthly's right to recover the $149,107.74 it paid, plus interest."). Because the plaintiff in Texas Monthly did not merely object to a benefit given to some other taxpayer but arguably established that the state's unequal treatment resulted in a concrete injury, the Court concluded that the plaintiff alleged sufficient injury for standing. Id. That factor was considered decisive by the Court in ACSTO. See id. at 1440 (distinguishing the plaintiff in Texas Monthly, who "sought to recover tax payments," from the plaintiffs in ACSTO, who relied on their status as taxpayers). That logic is in accord with other decisions finding that a plaintiff properly alleges an injury in fact when the plaintiff's allegations are based on the plaintiff's own allegedly improper tax treatment. See, e.g., Droz v. Commissioner, 48 F.3d 1120 (9th Cir. 1995) (taxpayer refusing to pay Social Security taxes without meeting the express, religion-specific requirements of § 1402(g) had standing to challenge the statute as violating the Establishment Clause as he had paid the tax and sought a refund). Here, Plaintiffs have not alleged that they have been denied the exemption they are challenging and thus have not suffered the requisite injury necessary to establish standing.

In addition, the Supreme Court clarified that the failure to address standing in previous Establishment Clause challenges did not establish that the plaintiffs in those cases had standing. The Court noted, "[w]hen a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed." ACSTO, 131 S. Ct. at 1448 (citing Hagans v. Lavine, 415 U.S. 528, 535 n.5 (1974)).

**F.     Plaintiffs have failed to allege sufficient facts to establish standing to challenge the constitutionality of § 107.**

Plaintiffs essentially assert only one fact in support of their contention that they have standing in order to challenge the constitutionality of § 107: their status as federal taxpayers. See Amended Complaint, ¶¶ 8-28. However, even if all of the Amended Complaint's factual allegations were accepted as true, Plaintiffs cannot establish standing under the requirements imposed by Article III of the United States Constitution. Therefore, Plaintiffs have failed to satisfy their burden of establishing subject matter jurisdiction, and the complaint must be dismissed pursuant to Fed. R.

MEMORANDUM IN SUPPORT OF
UNITED STATES' RENEWED
MOTION TO DISMISS                    –12–

Civ. P. 12(b)(1). See Kokkonen, 511 U.S. at 377.

Plaintiffs have failed to allege sufficient injury in fact by virtue of their status as taxpayers to satisfy Article III standing requirements. Therefore, the rule against taxpayer standing applies to bar the Plaintiffs from maintaining this action. First, nowhere do Plaintiffs contend that the treatment of their taxes was in any way improper. See Amended Complaint. Plaintiffs only contend that the treatment of taxes owed by third parties not before the court was improper. Id. at ¶¶ 4, 55-59. As such, because Plaintiffs challenge a tax exemption that does not affect any of their individual tax liabilities, Plaintiffs have not alleged a sufficient economic injury to establish standing. See ACSTO, 131 S. Ct. at 1444-48.

Plaintiffs' general, conclusory and speculative allegations regarding the constitutionality of § 107 do not constitute a particular and concrete injury in fact. Because § 107, as a tax exemption, does not "extract and spend" or transfer any of Plaintiffs' tax dollars "through the Government's Treasury to a sectarian entity," Plaintiffs have not alleged a particular injury in fact. See ACSTO, 131 S. Ct. at 1445-46. Plaintiffs' allegations rely on either unjustifiable speculation or intervening causal actors. For example, Plaintiffs' allegation that § 107 has any effect on the federal budget is speculative. See id. at 1444. It requires speculation that federal lawmakers would react to revenue shortfalls by increasing Plaintiffs' tax liability. See id. (citing DaimlerChrysler, 547 U.S. at 344). Moreover, such an increase would have to have been fairly traceable to the revenue shortfalls specifically caused by § 107, "as distinct from other governmental expenditures or other tax benefits." Id. In addition, Plaintiffs cannot establish that their injury is redressable by showing that an injunction against application of § 107 would prompt federal legislators to "'pass along the supposed increased revenue in the form of tax reductions.'" Id. (quoting DaimlerChrysler, 547 U.S. at 344). Therefore, Plaintiffs have not established standing solely by virtue of their status as taxpayers.

Furthermore, Plaintiffs fail to satisfy the requirements for standing under the Flast exception. Like the dollar-for-dollar tax credit analyzed in ACSTO, § 107 does not provide for the extraction of any taxes, let alone spend them. See ACSTO, 131 S. Ct. at 1440. Like other tax benefits, whether

MEMORANDUM IN SUPPORT OF
UNITED STATES' RENEWED
MOTION TO DISMISS                –13–

they are credits or exemptions, § 107 does not expend the Plaintiff-taxpayers' money, not even three pence of it, in aid of religion. Therefore, Plaintiffs' allegations cannot satisfy the nexus requirement imposed by Flast, and reaffirmed in Hein and ACSTO, that there be an injury in fact fairly traceable to the challenged congressional action and likely redressable by a favorable decision. See Hein, 551 U.S. at 611; ACSTO, 131 S. Ct. at 1447-48. Plaintiffs have identified no particular or concrete way in which their taxes have been directed to the advancement of religion by virtue of the administration of the Internal Revenue Code. Plaintiffs allege that ministers receive a benefit due to lessened tax burdens, not that tax money has been transferred to them. See Amended Complaint, ¶ 55. Furthermore, numerous intervening causal agents, unconstrained by congressional direction, may intercede in the expenditure of their tax dollars, reducing the traceability of any injury. Finally, it is entirely speculative that "abolishing the challenged credit will redound to the benefit of the taxpayers" or diminish the amounts that are spent by private entities advancing religion in order to redress any Establishment Clause injury. See DaimlerChrysler, 547 U.S. at 344. Plaintiffs' assertion of taxpayer standing in challenging § 107, a tax exemption without any corresponding expenditure of funds, attempts to place more weight on the Flast exception than it can bear. Therefore, because the United States does not actually spend any funds collected from any taxpayers as a result of § 107, let alone transfer funds from taxpayers to sectarian entities, Plaintiffs have not suffered an injury in fact, do not meet the narrow Flast exception, and lack Article III standing.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs have failed to meet their burden of establishing that they have the requisite standing to bring this action and the Complaint must be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Respectfully submitted this 26th day of May, 2011.

            BENJAMIN B. WAGNER
            United States Attorney

By:   /s Jeremy N. Hendon
      JEREMY N. HENDON
      RICHARD A. SCHWARTZ
      Trial Attorneys, Tax Division

MEMORANDUM IN SUPPORT OF
UNITED STATES' RENEWED
MOTION TO DISMISS         –14–

U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF UNITED STATES' RENEWED MOTION TO DISMISS** has been made this 26th day of May, 2011 via the Court's CM/ECF system to:

| | |
|---|---|
| Michael Newdow | NewdowLaw@gmail.com |
| Richard L. Bolton | rbolton@boardmanlawfirm.com |
| *Counsel for Plaintiffs* | |
| | |
| Kevin Snider | kevinsnider@pacificjustice.org |
| Matthew McReynolds | mattmcreynolds@pacificjustice.org |
| *Counsel for Amicus Curiae* | |
| | |
| Jill Bowers | jill.bowers@doj.ca.gov |
| *Counsel for Selvi Stanislaus* | |

/s/ Jeremy N. Hendon
JEREMY N. HENDON
RICHARD A. SCHWARTZ
Trial Attorneys, Tax Division
U.S. Department of Justice